UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

|  |  |  |
|---|---|---|
| In re: | : | |
| | : | |
| SOLENA FUELS CORPORATION | : | Case No. 15-24430-WIL |
| | : | (Chapter 7) |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| GARY A. ROSEN, | : | |
| Chapter 7 Trustee | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. Pro. 17-00471 |
| | : | |
| | : | |
| DR. ROBERT T. DO | : | |
| | : | |
| Defendant. | : | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFFS' OBJECTIONS TO DEFENDANT'S STATEMENT OF MATERIAL
FACTS IN OPPOSITION TO SUMMARY JUDGMENT**

Pursuant to Federal Rule of Bankruptcy Procedure 7056 and Federal Rule of Civil
Procedure 56(c), Plaintiffs state the following objections to Defendant's Statement of Material
Facts in Opposition to Summary Judgment.  Plaintiffs' objection or non-objection is not a
concession that any statement is material.  Likewise, Plaintiffs' objection or non-objection is not
an admission that the statement is accurate, complete, correct, supported or admissible for any
other purpose.[1]

---

[1] To the extent Assignees stipulated to the truth of the factual statements for purposes of this
motion, Assignees do not concede that any of Defendants proffered facts are, in fact, true.  *See
Feldman's Med. Ctr. Pharm.*, Inc., No. SKG-10-254, 2011 U.S. DIST. LEXIS 101425 (D. Md.
June 17, 2011) (holding that the Defendant could accept the Plaintiff's assertions of fact for
purposes of the motion only and the court would not deem established, for purposes of the case
or otherwise).

| STATEMENT | RESPONSE |
|---|---|
| 1. In 2001, Dr. Do formed the company now known as SGI. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 2. SGI was formed to commercialize a clean, renewable technology to convert all forms of waste into a synthetic fuel that could power turbines for power production ("bio-power") or be converted into synthetic liquid biofuels ("biofuels"). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 3. SGI acquired three domestic patents for the Solena Technology and also acquired certain counterpart foreign country patents. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 4. SGI conceptually designed several renewable energy "end to end" bio-power products, including (i) miniature power units ("Pico Power Units") which produce 1 to 2 MWs of electricity, (ii) small decentralized green power systems ("DGPS") which produce 8 to 10 MWs of electricity and (iii) large-scale integrated plasma gasification combined cycle systems ("IPGCC") which produce 40 MWs or more depending on configuration. Def. Ex. 2 (License and Manufacturing Agreement (hereinafter "Manufacturing Agreement" at ALQ_000241). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with admissible evidence, as the document relied upon is hearsay.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 5. The IPGCC system was being marketed as a $90 to $100 million system, the DGPS system was being marketed as a $30 to $40 million system, and the PICO system was being marketed as a $15 million system. Def. Ex. 3 (Rule 30(b)(6) Depo of SGI at 199:18 – 200:16; 101:4- 14; 200:22 – 201:3). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with admissible evidence, as the document relied upon does not reference the marketing of these systems, but the cost.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 6. SGI's business plan was to license and/or sell the bio-power products and related services to third party developers of power projects and/or to receive dividends from equity participations during the operational phase of bio-power projects it developed itself or through its network of joint venture partners. Def. Ex. 3 (Rule 30(b)(6) Depo of SGI at 300:12 – 302:4). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with admissible evidence, as the exhibit relied upon does not reference SGI's purported business plan.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 7. Initially, SGI was focused on the design of the large-scale IPGCC product which used a combined cycle turbine sold by General Electric ("GE") to maximize efficiencies. Def. Ex. 3 (Rule 30(b)(6) Depo of SGI at 102:21 – 103:14). SGI spent approximately $20 million to complete the design and engineering work for IPGCC. *Id.* at 277:22 – 278:14. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 8. In November 2002, Ocean Lines Limited, a subsidiary of CSL Equity Investments Ltd., OPG Ventures, Inc., a division of Ontario Power Generation, DTE Energy Ventures and Hydro-Quebec Capitech Inc. (the "Investors") invested an aggregate amount of $10,000,000 in SGI and acquired Series A Preferred Stock. Def. Ex. 3 (Rule 30(b)(6) Depo of SGI at 278:3-10). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 9. In June 2005, SGI brought in a new investor, Acciona Servicios Urbanos y Medio Ambiente, S.L. ("Acciona"), a Spanish corporation, which signed an Exclusive Master Teaming Agreement (the "Acciona Teaming Agreement"). Under the Acciona Teaming Agreement, Acciona gained the exclusive rights to the SPGV Technology and the development of bio-power projects in Spain. At the same time, Acciona purchased 433,333 shares of common stock of SGI (representing 25.0% of the total outstanding shares at that time) for $5 Million. Based on the price paid by Acciona, the imputed value of SGI was $20 Million. Def. Ex. 3 (Rule 30(b)(6) Depo of SGI at 278:11-12); Def. Ex. 4 (Acciona Master Teaming Agreement). | Assignees do not dispute this statement of fact for the purposes of this motion. <br><br> Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 10. SGI was able to piggyback on the groundwork that was already completed on the IPGCC product in order to develop the smaller, modular DGPS and Pico products. Def. Ex. 3 (Rule 30(b)(6) Depo of SGI at 285:14-287:8). | Assignees do not dispute this statement of fact for the purposes of this motion. <br><br> Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 11. In conjunction with its joint venture partners in the Czech Republic and Italy, SGI spent an additional $6 million to develop the design and costing for the DGPS unit. Def. Ex. 3 (Rule 30(b)(6) Depo of SGI at 288:10-15). | Assignees do not dispute this statement of fact for the purposes of this motion. <br><br> Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 12. In total, SGI spent 10 years and $26 million of institutional investor funds in completing the design, engineering and costing for the SGI Products to bring them to the point where they could be commercialized and sold. Def. Ex. 3 (Rule 30(b)(6) Depo of SGI at 285:14-287:8, 287:10–289:2). | Assignees do not dispute this statement of fact for the purposes of this motion. <br><br> Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 13. Of its three SGI Bio-Power Products – PICO, DGPS, and IPGCC – SGI focused its efforts on the DGPS product because it was the right scale and could be operationalized at the right price to meet the tremendous demand in the marketplace. SGI modified its business model and applied its technology and know-how to create small, modular, prefabricated systems (the "Kits"). Def. Ex. 3 (Rule 30(b)(6) Depo of SGI at 292:14 – 293:1). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with admissible evidence, as the deposition testimony relied upon does not reference SGI and does not support the proffered fact.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 14. SGI had identified a manufacturing and engineering company in the Czech Republic named Ekol to build the DGPS gasifier. Def. Ex. 3 (Rule 30(b)(6) Depo of SGI at 289:4- 14). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 15. SGI had also identified an engineering company called 3D Chemprag that would be responsible for assembling the DGPS kit for individual projects. Def. Ex. 3 (Rule 30(b)(6) Depo of SGI at 289:4-14). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 16. In his response to interrogatories, Sharma stated: "In December 2008, ALQIMI Technology entered into a Shareholder's Agreement with SGI pursuant to which ALQIMI Tech paid SGI $750,000.00. In July 2009, Rajeev Sharma purchased 110,000 shares of common stock in SGI from Robert Do for $1,165,540." *See* Def. Ex. 5 (Def. Sharma First Supplemented Interrogatory Responses). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 17. On February 6, 2009, ALQIMI and SGI formed a company called Solena-ABSi Mauritious Ltd. ("SAML") under Mauritious law. Def. Ex. 1 (DSMF at ¶ 89); Def. Ex. 5 (Def. Sharma First Supplemented Interrogatory Responses at 18). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 18. SAML was in the business of marketing and distributing the Solena Technology in the territories of Sri Lanka, Mauritius and India. Def. Ex. 1 (DSMF at ¶ 90). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 19. In July 2009, Sharma purchased 100,000 shares of common stock in SGI (representing 5.4% of the outstanding shares at that time) from Robert Do for $1,165,540. This gives an imputed value for SGI of $18.1 Million. Def. Ex. 5 (Def. Sharma First Supplemented Interrogatory Responses at 18). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with admissible evidence, as the exhibit relied upon does not discuss the percentage ownership or imputed value.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 20. In April 2010, ALQIMI Tech invested $1,000,000.00 in Indy Green Energy, LLC, a special purpose entity of SGI formed to pursue an IPGCC project with General Electric ("GE"). Def. Ex. 5 (Def. Sharma First Supplemented Interrogatory Responses at 18). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 21. In June 2010, SAIP entered into a MoU with North Delhi Power Limited to explore the feasibility of developing a facility in Delhi. Def. Ex. 5 (Def. Sharma First Supplemented Interrogatory Responses at 19). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 22. In December 2010, ALQIMI Tech made a loan in the amount of $175,000 to Dr. Do, which later converted to SFI interests. Def. Ex. 5 (Def. Sharma First Supplemented Interrogatory Responses at 18). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 23. In January 2011 SAIP entered into a MoU with Tata Power to explore a potential algae pilot project. Def. Ex. 5 (Def. Sharma First Supplemented Interrogatory Responses at 19). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 24. In July 2011 SAIP entered into a MoU with a Sri Lankan entity to explore the feasibility of a project in Colombo. Def. Ex. 5 (Def. Sharma First Supplemented Interrogatory Responses at 19). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 25. In 2011, SGI and ALQIMI formed a company called Solena Q NRG, LLC ("Solena Q"). Def. Ex. 1 (DSMF at ¶ 91). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 26. Solena Q was in the business of marketing and distributing the Solena Technology to the U.S. Department of Defense and in Florida and Texas. Def. Ex. 1 (DSMF at ¶ 92). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 27. In August 2014, Solena Q formed a joint venture with Pelatron Power Evolution, LLC, an unaffiliated third party, to develop renewable energy products within the public sector in Hawaii. Def. Ex. 5 (Def. Sharma First Supplemented Interrogatory Responses at 20). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 28. In June 2011, ALQIMI also purchased interests of SFI Investors, LLC for $500,000.00. Def. Ex. 5 (Def. Sharma First Supplemented Interrogatory Responses at 18). | Assignees do not dispute this statement of fact for the purposes of this motion. |
| | Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 29. In April 2012, SAIP entered into a MoU with Beltron Telecom Green Energy Systems Ltd to explore the feasibility of a project in Bihar, India contingent on Beltron securing specific project requirements. Def. Ex. 5 (Def. Sharma First Supplemented Interrogatory Responses at 19). | Assignees do not dispute this statement of fact for the purposes of this motion. |
| | Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 30. In December 2012 SAIP entered into a Joint Project Development Agreement with Coimbatore Integrated Waste Management Co. Pvt. Ltd. Def. Ex. 5 (Def. Sharma First Supplemented Interrogatory Responses at 19). | Assignees do not dispute this statement of fact for the purposes of this motion. |
| | Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 31. In March 2013 SAIP entered into a Joint Project Development Agreement with Excel Industries Ltd. *Id*. Def. Ex. 5 (Def. Sharma First Supplemented Interrogatory Responses at 19-20). | Assignees do not dispute this statement of fact for the purposes of this motion. |
| | Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 32. In March 2013, Sharma approached Dr. Do and SGI with an idea of building the Kits in India. Sharma believed that if the joint ventures between SGI and ALQIMI (SAML and SAIP) built the kits in India with Indian labor, that the Indian government and municipalities would be more likely to buy the system for their electricity needs. Def. Ex. 3 (Rule 30(b)(6) Depo of SGI at 292:14 – 293:1; 294:15 – 295:18). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with admissible evidence, as the deposition testimony of Defendant cannot be used to establish the beliefs of Mr. Sharma. |
| | Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 33. ALQIMI had been operating in India since 2007 and was the perfect partner for SGI in a market poised for substantial growth in the renewable sector and where waste to energy was desperately needed and underserved. Def. Ex. 9 (ALQIMI Presentation at AD_017590). ALQIMI had dedicated resources and an office in Delhi; an established reputation in the market and an extensive ecosystem of business relationships. *Id.* | Assignees do not dispute this statement of fact for the purposes of this motion. Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 34. On March 17, 2013, Sharma wrote an email to Dr. Do with the following text: | Assignees do not dispute this statement of fact for the purposes of this motion. |
| | Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

Greetings from Delhi, just got your mail. BTW, Brian told me about the award to Virgin, most disappointing. Are you back in Washington?

I was a bit surprised by your mail but upon reflection I can see how a call from the torch suppliers could lead to some confusion. Fortunately there is a very simple explanation.

In actuality we have been discussing the need for a pricing model for an Indian manufactured solution both with you and your team for quite a while now. The request for basic information to the torch suppliers was simply in service of that requirement. We urgently need the India baseline costs to be able to internally qualify our opportunities. But more importantly, we had also collectively agreed that to be competitive in India and Sri Lanka, we need a solution with indigenously procured components and indigenous manufacturing. We have had additional discussions about the need for a competent Indian EPC (Fluor India) as well as a critical need for a reliable and trustworthy partner to support us on the manufacturing of the gasification vessel like Tata (TCE).

Using the models that have provided by you and your team as a starting point, we have been diligently assembling a baseline Indian prices for the commercial off the shelf components in both the DGPS and the IPGCC solutions. Upon completion of this exercise, we intend to present the Indian pricing models for a review and discussion between Solena and ABSi. The result of the review would be an agreed upon sign-off for a costing ROM (Rough Order of Magnitude) for each solution. We understand that the real and accurate costing will come as a result of a formal FEED exercise. But in the interim, based on the estimated costing ROM we can propose an initial commercial price (a commercial ROM for lack of a better term) for each

10

| | |
|---|---|
| 35. Sharma believed that their joint ventures could improve their margins because employment and equipment are both cheaper in India. Depo at 295:12-18. According to Sharma, the joint venture could improve their profit margin from $3 million to $4 million by moving production from the Czech Republic to India. Def. Ex. 3 (Rule 30(b)(6) Depo of SGI at 318:10-14). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with admissible evidence, as the deposition testimony of Defendant cannot be used to establish the beliefs of Mr. Sharma.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 36. In June 2013 SAIP entered into a Joint Project Development Agreement with Emergent Ventures India Pvt Ltd. Def. Ex. 5 (Def. Sharma First Supplemented Interrogatory Responses at 20). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 37. In October 2013 SAIP entered into an LOI with A2Z. *Id.* Def. Ex. 5 (Def. Sharma First Supplemented Interrogatory Responses at 20). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 38. In February 2014, ALQIMI made a loan to Dr. Do in the amount of $150,000.00. Def. Ex. 5 (Def. Sharma First Supplemented Interrogatory Responses at 18). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 39. In December 2014, ALQIMI GE&F made a series of bridge loan financings to SFC in the amount of approximately $398,000.00. Def. Ex. 5 (Def. Sharma First Supplemented Interrogatory Responses at 18). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 40. Collectively, Sharma and ALQIMI, invested a total of five million dollars with SGI. Def. Ex. 8 (Sharma Depo at 96:21-97:6). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 41. On November 20, 2014, SGI entered into a License and Manufacturing Agreement (the "Manufacturing Agreement") with SAML, SAIP, Solena Q and ALQIMI GE&F Holdings, LLC (collectively the "ALQIMI Entities"). Def. Ex. 2 (Manufacturing Agreement). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

42. The key elements of the Manufacturing Agreement include:

- The ALQIMI Entities acknowledged that SGI, using the SPGV Technology, had conceptually designed several renewable energy solutions, including (i) miniature power units ("Pico Power Units"), (ii) small decentralized green power systems ("DGPS") and (iii) large-scale integrated plasma gasification combined cycle systems ("IPGCC"). Def. Ex. 2 (Manufacturing Agreement at Recital C).

- SGI granted the ALQIMI Entities the license to exploit and use the SPGV Technology to develop, design, construct and operate or sell SPGV Units and Plants in their respective exclusive territory. Def. Ex. 2 (Manufacturing Agreement at §§ 2.1 – 2.3).

- SGI also granted the ALQIMI Entities the license to manufacture the Kits using SPGV Technology in India, Mauritius and Sri Lanka, either on a stand-alone basis or integrated or combined with other technologies. This applied to both (i) the promotion, development, design and construction of SPGV Power Units in the SAML/SAIP Territory and (ii) the sale and distribution, inside (exclusively) and outside the SAML/SAIP Territory (non-exclusively) of manufactured product utilizing the SPGV Technology (which could be in the form of Pico Units, DGPS Units, various sizes of Gasification Reactors/Vessels or any similar manifestation of the SPGC Technology (collectively, "Manufactured SPGV Product."). Def. Ex. 2 (Manufacturing Agreement at § 2.4).

- "In connection with the above manufacturing license and related rights, SAML/SAIP will: (i) select a reputable lead Indian engineering and design firm, manufacture and material vendors with the consent of SGI, which consent will not be unreasonably withheld; (ii) retain competent Indian counsel and consultants, and with the assistance of SG, negotiate and execute a Manufacturing Agreement containing a license to build and a non-circumvention of SFC Patents provision, among other customary provisions reasonably acceptable to SGI; (iii) coordinate the manufacturing schedule and shipping of Manufactured SPGV Product that is sold inside or outside of the SAML/SAIP Territory ...." Def. Ex. 2 (Manufacturing

Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with admissible evidence. Specifically, Defendant makes repeated reference to the "ALQIMI Entities," which term is undefined and the identity of those parties and the relevance of the fact is not apparent from the evidence.

Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment.

| | |
|---|---|
| 43. ALQIMI conducted comprehensive costing for the components of the Kits in India and developed and sourced delivery solutions for gasifier fabrication, India costing for the balance of plant, identified Indian resources to complete the projects: TATA Group, TERI and BHEL and EPCs. Def. Ex. 9 (ALQIMI Presentation at AD_017570). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with admissible evidence.  Specifically, Defendant makes reference to the term "ALQIMI," which term is undefined and the identity of the party or the relevance of the fact is not apparent from the evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 44. According the Manufacturing Agreement, all income and profit generated by SAML/SAIP and Solena Q whether from sales of SPGV Power Units and/or Plants, vendor margin, engineering, technical or other services, etc. and it was agreed that all of these fees would be run through the ALQIMI Entities and profits distributed pursuant to the respective JV agreements. Def. Ex. 2 (Manufacturing Agreement at § 4). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with admissible evidence.  Specifically, Defendant makes reference to the "ALQIMI Entities," which term is undefined and the identity of those parties is not apparent from the evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 45. Given the allocation of responsibility in the Manufacturing Agreement, SGI had a fully funded business plan with respect to the sale of the Kits. Def. Ex. 2 (Manufacturing Agreement at § 2.4.3); Def. Ex. 10 (McGuire Depo at 82:19-83:11). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with admissible evidence.  Specifically, the cited evidence does not support the proffered fact.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 46. In December 2014, as part of consideration for the bridge loan made by ALQIMI to SFC, Sharma demanded that the profit percentages in SAML and Solena Q be renegotiated and the percentages for the joint ventures were increased from 60% to 65% for SAML and from 50% to 55% for Solena Q. Def. Ex. 11 (ALQ_004791); Def. Ex. 8 (Sharma Depo 104:17-105:15); Def. Ex. 38 (Email Exchange at AD_017653). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with admissible evidence. Specifically, the cited evidence does not support the proffered fact.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 47. On March 1, 2013, SFC executed a Joint Development Agreement for the development of a renewable energy project with TPST Bantargebang, Pertamina and General Electric ("GE") to develop a bio-power project in Indonesia (the "Pertamina Project"). Def. Ex. 103 (Joint Development Agreement). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 48. On March 5, 2013, the Robert Do executed a written assignment assigning the project to SGI. Def. Ex. 12 (Assignment at Art. 1). Any rights which SFC had to the Pertamina project were assigned to SGI pursuant to a lawful and legitimate assignment agreement because it was a bio-power project. *Id.* | Assignees do not dispute that Do executed the written assignment agreement found at Exhibit 12.<br><br>Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground the evidence does not support the Defendant's characterizations or legal conclusions, which are not factual statements but argument. |
| 49. The March 5, 2013 assignment stated, among other things, "SFC will commit technical and engineering resources to SGI for the development of the project with Pertamina upon request and any other material resources available for the successful execution of the project at no cost to SGI." Def. Ex. 12 (Assignment at Art. 2). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 50. On March 10, 2013, Robert Do sent an email to members of the Board of Directors of SFC (Aryeh Davis, Richard Wenzel, Hung Bui-Quang) and to the CFO of SFC (Brian Miloski) with the following text:<br><br>Gentlemen,<br><br>I want to update you on some very exciting developments with GE. As you know, GE has been a long time relationship of mine having extensively worked with them on the original solena biopower solution (the integration of a power block and HSRG is critical to gross efficiencies). When the solena Fuels opportunity became as big as it did (we use a big power block in the solena Fuels solution) I had desired to get GE more involved in our story given their presence in oil & gas, power and aviation.<br><br>With these three GE businesses crossing over on ours, I have wanted to get GE corporate formally engaged and I recently struck a few good contacts higher up in the chain. what they came back to us with was the desire for GE to be able to show an integrated GE/Solena waste to energy solution to their clients around the world, basically to start collaborating more. To that end, we have a "Joint Master Development Agreement" with GE which basically gives GE permission to talk to their client base about our solution. As an exciting result of this agreement and GE's global marketing team and presence, GE introduced one of its clients, Pertamina (the National oil and gas company of Indonesia), to the Salena solution. Pertamina is interested in expanding its energy business to include renewables, particularly waste to energy. Pertamina decided to enter the waste to energy market to take advantage of Jakarta's massive waste and landfilling issues (like most major cities in the world) and requested GE to assist them.<br><br>The great news is that Pertamina has decided to select GE and Solena to bring their respective technologies to participate in a detailed conceptual design study to evaluate a waste to energy project for Jakarta. Under our agreement, we will | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

16

| | |
|---|---|
| 51. After Robert Do disclosed the Pertamina Assignment to the SFC Board of Directors in March 2013, it was discussed at the SFC Board of Directors' meetings in November 2013, December 2013 and April 2014. Specifically, at these SFC Board meetings, Davis, Wenzel and Hoffer discussed transferring SGI's exclusive bio-power license to SFC so that SFC could pursue the Pertamina project. Def. Ex. 13 (Notes of Richard Wenzel); Def. Ex. 14 (Email from Davis to SFC Board). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence. Specifically, none of the exhibits cited can be reasonably read to infer that Do disclosed his self-dealing to the board or that it was discussed at any board meeting. |
| 52. In May 2015, the land for the Pertamina project had been identified. Def. Ex. 2 (Rule 30(b)(6) Depo of SGI at 271:8-12). | Pursuant to Fed. R. Civ. P. 56(c)(2) and (4), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence (Do's counsel, who was conducting the questioning, failed to lay a foundation for Do's knowledge, as required by Rule 56(c)(4)).<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 53. In May 2015, the environmental permitting for the Pertamina project had been completed. Def. Ex. 2 (Rule 30(b)(6) Depo of SGI at 271:8-12). | Pursuant to Fed. R. Civ. P. 56(c)(2) and (4), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence (Do's counsel, who was conducting the questioning, failed to lay a foundation for Do's knowledge, as required by Rule 56(c)(4)).<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 54. In May 2015, there was a power purchase agreement in place for the Pertamina project. Def. Ex. 2 (Rule 30(b)(6) Depo of SGI at 271:20 – 272:9); | Pursuant to Fed. R. Civ. P. 56(c)(2) and (4), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence (Do's counsel, who was conducting the questioning, failed to lay a foundation for Do's knowledge, as required by Rule 56(c)(4)). <br><br> Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 55. In May 2015, General Electric and a company called Godang Tua had been identified as the equity participants for the project. Def. Ex. 2 (Rule 30(b)(6) Depo of SGI at 272:11- 17). | Pursuant to Fed. R. Civ. P. 56(c)(2) and (4), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence (Do's counsel, who was conducting the questioning, failed to lay a foundation for Do's knowledge, as required by Rule 56(c)(4)). <br><br> Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 56. In May 2015, Pertamina's in-house banking facility had been identified as the lending consortium for the project. Def. Ex. 2 (Rule 30(b)(6) Depo of SGI at 272:22 – 273:2). | Pursuant to Fed. R. Civ. P. 56(c)(2) and (4), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence (Do's counsel, who was conducting the questioning, failed to lay a foundation for Do's knowledge, as required by Rule 56(c)(4)). <br><br> Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 57. In May 2015, there was a projected price for the sale of electricity. Def. Ex. 2 (Rule 30(b)(6) Depo of SGI at 270:14-19). | Pursuant to Fed. R. Civ. P. 56(c)(2) and (4), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence (Do's counsel, who was conducting the questioning, failed to lay a foundation for Do's knowledge, as required by Rule 56(c)(4)). Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 58. In May 2015, there was an agreement regarding the applicable tipping fee. Def. Ex. 2 (Rule 30(b)(6) Depo of SGI at 270:21 – 271:6) | Pursuant to Fed. R. Civ. P. 56(c)(2) and (4), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence (Do's counsel, who was conducting the questioning, failed to lay a foundation for Do's knowledge, as required by Rule 56(c)(4)). Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 59. In early 2010, British Airways selected SGI at its vendor to develop a biofuels project in the city of London, England (the "British Airways Project"). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence. Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 60. According to the initial non-binding Letter of Intent, the parties anticipated the construction of a $280 million self-contained plant, which would open in 2014 and would convert 500,000 tons of waste per year when fully operational. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence. Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 61. Although the BA Project presented a genuine opportunity, it was contingent on SFC attracting sufficient financing to develop and build the project. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 62. In addition to finding financing for the British Airways project, SFC would need to engage in several development stages, including front end engineering and design (FEED), engineering, construction and procurement, testing and operation. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 63. Samberg was told that SFC would need to raise about $30 million to develop the downstream process and choose the downstream equipment. Def. Ex. 3 (Rule 30(b)(6) Depo of SGI at 282:4 – 283:6). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 64. In 2011, Do was introduced to Art Samberg as a potential investor in SGI. SAC DSMF at ¶ 24. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 65. SGI underwent a restructuring that resulted in a new company, Solena Fuels Corporation (hereinafter "SFC"), owning the Solena Patents and the rights to develop the BA Project, all free and clear of any previous liabilities of SGI. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 66. Samberg and his affiliates believed that it would be easier to obtain further financing for the project if SFC owned the patents to the SPGV Technology directly. Def. Ex. 15 (Presentation at AD_010245). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 67. Solena Fuels Corporation was formed to pursue the new biofuels business, while SGI continued to pursue its existing bio-power business. Def. Ex. 15 (Update for Solena Noteholders); Def. Ex. 16 (Excerpt of Davis Depo at 79:3-13); Def. Ex. 18 (Excerpt of Miloski Depo at 170:4-14). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 68. Following the restructuring, all of the employees of SGI became employees of SFC. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 69. After the restructuring, SFI owned a majority of the common stock of SFC, and SGI was the majority owner of SFI. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 70. On April 11, 2012, SGI and SFC entered into an Amended and Restated Exclusive Patent License Agreement (the "SGI License"). Def. Ex. 17 (License Agreement). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 71. Section 2.01 of the SGI License provides: "Subject to the terms and conditions of this Agreement, Licensor hereby grants to Licensee, an exclusive license, under the Licensed Patents, to make, have made, use, service, offer for sale and sell, have sold, import and export, have imported and exported, Licensed Products solely within the Field of Use and solely in the Licensed Territory. As consideration for such license, Licensee shall pay the amount set forth in Section 3.01." Def. Ex. 17 (License Agreement at § 2.01). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 72. The License Agreement defined "Licensed Territory" to mean "all countries of the world in which Licensor holds the Licensed Patents." Def. Ex. 17 (License Agreement at § 1.05). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 73. The License Agreement defined "Licensed Products" to mean "any reactors, related apparatus and other products now or hereafter developed or sold by Licensee or its Affiliates which are used to solely to produce electricity, steam and/or heat, and which in the absence of this Agreement would infringe at least one claim of a Licensed Patent." Def. Ex. 17 (License Agreement at § 1.04). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 74. The License Agreement defined "Field of Use" to mean "the standalone production of electricity using biomass (e.g., agriculture, forestry or municipal waste) as a feedstock through a combined gasification and gas engine, gas turbine and/or steam turbine (or any combination thereof including IPGCCTM) to produce electricity, steam and/or heat." Def. Ex. 17 (License Agreement at § 1.02). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 75. Section 2.02 of the SGI License provides: "2.02 Licensee may sublicense the rights granted to Licensee under Section 2.01 to any party provided that the sublicense granted by Licensee(a) is made pursuant to a binding written agreement between Licensee and the sublicensee (the 'Sublicense Agreement') which protects Licensor's interests and rights in the Licensed Patents to at least the same extent as this Agreement, (b) is of no greater scope than the license granted to Licensee in Section 2.01, and (c) does not permit the sublicensee to grant further sublicenses. Licensee will provide Licensor with a copy of each fully executed Sublicense Agreement and Licensee will at all times remain fully responsible and liable for the acts and omissions of each sublicensee in connection with its respective Sublicense Agreement." Def. Ex. 17 (License Agreement at § 2.02). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 76. Section 8.03 of the License Agreement states, "This Agreement may be terminated by either party hereto with notice, (i) upon the institution by or against the other party hereto of insolvency, receivership or bankruptcy proceedings which proceedings are not dismissed within sixty (60) days, (ii) upon the other party's assignment for the benefit or creditors, (iii) upon the other party's dissolution or ceasing to do business, or (iv) upon mutual agreement of the parties hereto. Def. Ex. 17 (License Agreement at § 8.03). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 77. As CEO of SGI, it was important to Dr. Do that the bio-power business remain separate from SFC. Def. Ex. 16 (Excerpt of Davis Depo at 79:3-4) ("My recollection is Dr. Do wanted to keep the electric business."). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Mr. Davis cannot testify as to Dr. Do's state of mind.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 78. The SGI License accomplished that goal by giving SGI the sole and exclusive right to utilize the SPGV patents for the bio-power business. Def. Ex. 17 (License Agreement at § 2.01); Def. Ex.18 (Excerpt of Miloski Depo at 170:4-14). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground it mischaracterizes the evidence.  § 2.04 of the License Agreement expressly reserves to SFC the right to pursue bio-power projects and the deposition testimony cited is not to the contrary.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 79. Both parties to the restructuring understood that SGI's bio-power business would remain separate from SFC's biofuels business. *See* Def. Ex. 16 (Excerpt of Davis Depo at 79:5-13) ("Q: So, in fact, was it your understanding when you invested in Solena Fuels Corporation that the bio-power business was going to be kept separate from Selena Fuels Corporation? A: We knew it was separate."). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground it mischaracterizes the evidence, which does not support the factual assertion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 80. SGI continued to own the joint ventures and business relationships it had entered prior to the creation of SFC, as well as the underlying know-how, engineering work and conceptual design of the bio-power products, including the PICO, DGPS and IPGCC power units. *See* Def. Ex. 2 (Manufacturing Agreement at ALQ_00243). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground it is hearsay and the document cited does not support the fact alleged. Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 81. After the restructuring, SGI continued its focus on the commercialization of the bio-power business and the marketing of its bio-power products, both in the name of SGI and through its various joint ventures (including with the ALQIMI Affiliates). Def. Ex. 15 (Update for Solena Noteholders at ALQ_005666); *See* Def. Ex. 2 (Manufacturing Agreement at ALQ_00243). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground it is hearsay and the document cited does not support the fact alleged. Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 82. On April 11, 2012, Do entered into an employment agreement with SFC ("Employment Agreement"). Def. Ex. 12 (Employment Agreement). | Assignees do not dispute this statement of fact for the purposes of this motion. Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 83. Under the terms of the Employment Agreement, Do was to serve as SFC's President and Chief Executive Officer at an annual salary of $365,000 plus benefits and the opportunity for bonuses, and a $1,200 monthly stipend for an automobile. Def. Ex. 12 (Employment Agreement). | Assignees do not dispute this statement of fact for the purposes of this motion. Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 84. During his employment with SFC, Do was not permitted to "directly or indirectly, render any services of a commercial or professional nature to any other person or organization, whether for compensation or otherwise, except for a de minimus amount of business time to SGI." Def. Ex. 12 (Employment Agreement at ¶ 1). | Assignees do not dispute this statement of fact for the purposes of this motion. Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 85. Do agreed that any time devoted to SGI "shall not have an adverse effect on his obligations to the Company." Def. Ex. 12 (Employment Agreement at ¶ 1). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 86. Do agreed that he would not "without the prior written consent of the Company, directly or indirectly," do any of the following for at least six months following the end of his employment: | Assignees do not dispute this statement of fact for the purposes of this motion. |
| | Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

(1) Engage, own, manage, operate, control, be employed by, consult or contract for, participate in, or be connected in any manner with the ownership, management, operation or control of any business in competition with the business of the Company *(it being understood and agreed that the business of Solena Group not related to biofuels shall not be deemed the business of the Company nor shall it be deemed in competition)*;

(2) Recruit, solicit or hire, or attempt to recruit, solicit or hire, any employee, or independent contractor, consultant or agent of the Company to leave the employment (or independent contractor consulting or agent relationship) thereof, whether or not any such employee or independent contractor, consultant or agent is party to an employment or engagement/services agreement;

(3) Attempt in any manner to solicit or accept from any customer of the Company, with whom the Company had significant contact during Executive's employment by the Company ( whether under this Agreement or otherwise), business of the kind or competitive with the business done by the Company with such customer or to persuade or attempt to persuade any such customer to cease to do business or to reduce the amount of business which such customer has customarily done or might do with the Company, or if any such customer elects to move its business to a person other than the Company, provide any services (of the kind or competitive with the Business of the Company) for such customer, or have any discussions regarding any such service with such customer, on behalf of such other person; or

(4) Interfere with any relationship, contractual or otherwise, between the Company and any other party, including, without limitation, any vendor, supplier, distributor, coventurer or joint venturer of the Company to discontinue or reduce its business with the Company or otherwise interfere in any way with the Business of the Company.

27

| | |
|---|---|
| 87. SFC went through another round of financing in 2013 by selling "Series A" preferred stock to a new group of investors. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 88. The Series A Investors included Cohen, GA Development, LLC, ZLC Investments, LLC, SAN Development Company, LLC, SGNA, LLC, Acadia Woods Partners, LLC, Samberg Family Foundation, Inc., GreenFuel Technology, LLC, Aryeh Davis (collectively the "Series A Investors"). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 89. In total, through new cash or debt conversion, the Series A investors contributed more than $11.7 million to SFC. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 90. After the Series A investor closing, SFC's Board of Directors expanded to seven people, including three directors appointed by the "common" shareholders (controlled by Do), three directors appointed by the Series A Investors, and one independent board member. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 91. On or about September 24, 2013, the SFC and the Series A Investors executed the "Second Investors' Rights Agreement." | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 92. The Series A Investors appointed Aryeh Davis, Avi Hoffer and Richard Wenzel (the "Series A Directors") as their representatives. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 93. At this time, ZLC Investments invested approximately $300,000 in SFC. Def. Ex. 20 (ZLC Interrogatory Responses at 15). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 94. Between Q4 2013 and Q1 2014 GA Development purchased $1,200,000 worth of Series A Shares and Warrants in SFC. In July 2014 GA Development lent SFC $137,000 for a bridge loan. Def. Ex. 21 (GA Interrogatory Responses at 15). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 95. The Samberg Group designee was Aryeh Davis, and the Samberg Group consisted of Art Samberg, Acadia Woods Partners, LLC, and their affiliates. Def. Ex. 22 (Voting Agreement § 1.2(a)). The New Investor Group designee was Avi Hoffer, and the New Investor Group consisted of Richard Cohen, GA Development, LLC, the Lash Group LLC, ZLC Investment, LLC, Evan Novenstein, and any of their affiliates. *Id.* | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 96. In January 2014, Davis drafted a "Term Sheet for Cancellation of License Between Solena Fuels Corporation and SGI." Def. Ex. 106. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 97. Under the proposed Term Sheet for Cancellation of License Between Solena Fuels Corporation and SGI, SGI would be entitled to a 2.5% ownership stake in SFC as well as a percentage of net revenues from any electric project for five years. Def. Ex. 106. On April 15, 2014, the terms of acquisition proposed by Davis were rejected by Dr. Do's partner in SGI, Yves Bannell. Def. Ex. 107. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that there is no evidence that Exhibit 106 was communicated to Bannell.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 98. As the price of oil dropped dramatically, it became difficult for biofuels companies like SFC to obtain additional financing and had a dramatic effect on the economic feasibility of a biofuels project. Def. Ex. 3 (Rule 30(b)(6) Depo of SGI at 284:2-12). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence as the cited testimony does not support the fact.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 99. In August 2014, several of the initial investors agreed to provide one more round of financing. Under the terms of the Agreement between SFC and the investors, the investors agreed to provide closings of up to $1.5 million in the aggregate. In return, SFC agreed to a maturity date of December 1, 2014 and an interest rate of 10%. In addition, SFC agreed to put up all assets of the Company to secure the notes. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 100. On August 1, 2014, the SFC Board of Directors executed a unanimous written consent approving the sale of $1,500,000 in notes to individuals and entities affiliated with Aryeh Davis, Avi Hoffer or Richard Wenzel. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 101. The August 1, 2014 Stockholder Consent states (1) "without the Financing the Company will exhaust its current cash resources by early August, 2014 and potentially be forced to cease operations;" (2) "the Financing is necessary in order for the Company to ensure that the Company's operations continue beyond early August, 2014;" (3) the economy as a whole, and the private company financing environment in particular, is weak for businesses similarly situated to the Company (i.e., a company with sustained operating losses); and (4) "no persons or entities, other than SGNA LLC, GA Development and GreenFuel (the 'Initial Investors'), has provided the Company with an offer for a proposed equity or bridge financing and the Company is not able to continue to pursue alternative third-party financing because of the urgency of the Company's need for operating capital." | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 102. In October 2014, Do gave the Board of Directors an update on his fundraising activities with ITOCHU, British Airways and an investor based in Dubai. After discussing this progress and these developments, Do stated in an email to Aryeh Davis: "I would like to take you up on your previous bridge offer." | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

31

| | |
|---|---|
| 103. In November 2014, Davis asked Do about the impact of oil prices on the BA Project. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 104. On November 26, 2014, SFC held a telephonic board meeting, which was attended by Do, Miloski, Davis, Wenzel, Bui-Quang, Hoffer, Colin Tam and Mitchell Marder. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 105. On November 26, 2014, the board discussed various cost cutting measures, including a reduction of payroll expenses through termination, furlough, or alternative cash wage deferral arrangements. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 106. Davis stated in his interrogatory responses: "The 'December Board Meeting' was an emergency board meeting that occurred on November 26, 2014. [Davis] attended as a board member. [Davis] requested the emergency meeting because SFC was approaching the point at which it would run out of money to continue operating. [Davis] suggested that the SFC directors meet to discuss a reduced operating budget. [Davis] attended the meeting by telephone as a director of SFC. He wanted to discuss alternative plans for SFC, including selling the company or liquidating. The meeting was contentious. Robert Do refused to cut staff and insisted that he had leads for funding. The meeting quickly deteriorated to the point where it became unproductive." Def. Ex. 22 (Davis Interrogatory Responses at 17). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 107. No board action was taken at the November 26, 2014 meeting. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 108. On December 3, 2014, Do sent an email to the SFC board regarding the telephonic board meeting a week prior, stating that he would not consider board suggestions of (a) liquidation, 24<br><br>(b) overhauling the Green sky London project and related business plan, or (c) changes in management and other personnel. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 109. In the December 3, 2014 email, Do rejected suggestions that SFC consider laying off staff members or selling the company. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 110. In the December 3, 2014 email, Do stated, "any leaks of our financial distress to the market or through contacts with competitors such as Alter NRG and Fulcrum, both of which are promoting their own technology, will not only risk Solena losing the GSL and BA project, our major asset, but will also destroy the reputation of our IP and patents, and thus any remaining shareholder values." | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 111. In the December 3, 2014 email, Do also stated, "After conferring with senior management and other employees of the company, in light of the foregoing and lack of continued interim funding from the Series A, I believe that it is in the best interest of the stakeholders that the management team continues to maintain operations with deferred salaries and bridge funding from outside third parties. Additionally, management will work under close advice with the independent directors to evaluate and prepare an alternative and hopefully viable financial path forward for the company over the next two to three months." | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 112. In the December 3, 2014 email, Do stated, "until we have finalized an alternative viable financial path forward for the Company, I do not see the need to call for a Board meeting unless facts and circumstances changes and otherwise requires a sooner meeting." | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 113. On December 4, 2014, Aryeh Davis responded to Do's email, stating, "Perhaps you and I could have a calm one-on-one call to go over where we are and the alternatives for moving forward." | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 114. Do responded "Aryeh, I have laid out my position and proposal in details in my last email. I believe that it is in the interests of all stakeholders that I have the time requested to prepare an alternative and hopefully viable path forward for the company and to present to the full Board for discussion. I am of course always open to receive any written questions or proposal from you and the other investors and board members." | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 115. On December 9, 2014, Do approached Sharma about having ALQIMI provide a short-term bridge loan to SFC and assist with a buy out of the Series A investors. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 116. On December 11, 2014, Do wrote to Sharma proposing that they "work together to regain control of Solena Fuels and consolidate both the fuels and power business." | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 117. Sharma and Do then formed a partnership with the goal of buying out the Series A Investors. Def. Ex. 25 (Email from Sharma at ALQ_010964); Def. Ex. 24 (Email Exchange at ALQ_001283-84); Def. Ex. 26 (ALQ_010816-17). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground the evidence does not support the proffered fact.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 118. Do informed Sharma that he was speaking with a large investor to fund buy-out. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 119. In Sharma's own words, he and ALQIMI were "leading the Management Buy Out of SFC, funded by the Crown Prince of Dubai. Def. Ex. 25 (ALQ_010964). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 120. On January 8, 2015, Do executed an amendment to the Employment Agreement. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 121. Pursuant to the Amended Employment Agreement, Do's employment became at will at the end of the initial three year term (April 11, 2015) and at that point SFC could terminate his employment at any time, for any reason or no reason, just as he could voluntarily leave the company at any time. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 122. Sharma's General Counsel Joseph Carlin drafted a Term Sheet drafted a Term Sheet for the buyout of the Series A investors. Def. Ex. 8 (Sharma Depo at 108:13-109:22). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 123. On February 10, 2015, Miloski sent a Term Sheet to Colin Tam to provide to the Series A Investors. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 124. The Term Sheet offered to buy-out the Series A investors for $1.5 million. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 125. On February 10, 2015, Tam circulated the Term Sheet. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 126. On February 13, 2015, Davis wrote to Robert Do:<br><br>Again, before I can intelligently consider this term sheet, I would need (and feel I am entitled to) a face-to-face meeting with you to go over in detail where the Company is on all fronts - fundraising, strategy, project status, etc. An email from you telling me nothing has changed since your last email to me does not work for me. Avi and Dick will have to weigh in separately on where they stand as I cannot speak for them. Please let me know if and when you change your mind on this issue.<br><br>Def. Ex. 27 (Email exchange at AD_017771). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 127. On February 17, 2015, Davis wrote two emails to Samberg with the following text:<br><br>• Davis (February 17, 8:22 pm): "Since Robert continues to resist a meeting, do you want me to try to negotiate with the party that wants to buy our position? BA apparently won't be deciding on this investment until March 8th." Def. Ex. 27 (Email Exchange at AD_017770-71)<br>• Davis (February 17, 8:51 pm): "I will be in DC on March 1-2 anyway and could be there on March 3rd if needed for this. otherwise, we will be waiting for someone to bring a financing proposal to the company (if any) which will most likely result in a cram down at that time. In any event, we are getting crammed down.<br>Alternatively, we may want to retain counsel to see if they have any good advice on how to attack this problem. I am not convinced we have much to gain because ultimately any company run by Robert will be run into the ground. I am out of ideas other than to negotiate directly with the party that offered to buy our shares.<br>At some point (probably soon), I should probably resign from the Board. It is so dysfunctional at this point that I don't feel I can add value as a board member and may be taking on some legal risk by staying on (I have no idea what Robert is representing to investors, service providers, etc.). From an emotional standpoint, my resigning is a win for Robert and I hate that so I am willing to take the risk if we don't want to give him the satisfaction but we need to start thinking about timing. Def. Ex. 27 (Email Exchange at AD_017770) | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 128. On February 17, 2015, Samberg wrote an email to Davis with the text: "I thought we weren't going to obsess on this any longer. It is written off in my mind. I just don't want Robert to come out ahead in it." Def. Ex. 27 (AD_017770). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 129. On February 18, 2015, Samberg wrote an email to Davis with the text: "Sure. As I have said in my mind the investment is written off to zero. I don't want Robert to walk away with a sweet deal given that. At some level of monetary recoupment that feeling diminishes." Def. Ex. (AD_017770). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 130. On March 9, 2015, Do agreed that Sharma and Carlin should meet with Davis. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 131. Dr. Do put his trust in Sharma to negotiate the terms of the buy-out with the Series A investors. Def. Exs. 24-26. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground the evidence does not support the proffered fact.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 132. Prior to the March 12, 2015 meeting, Carlin wrote to Do, "Main goal of meeting with Ari will be to establish the engagement and framework within which we can hopefully move towards a mutually acceptable agreement. In these discussions we will stress that there is very little more if any cash at the table and we will need to focus and work on the terms of deferred payment/note to bridge the gap between what their expectation is and what SFC is capable of doing. We will stress that much will be driven by new investors and they will not agree to substantial amounts of new money being immediately paid out in connection with the financing. We will also stress, as Colin stressed, that we are seeking a global settlement with all A's and that will be critical to getting a deal done." | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 133. Do passed Carlin's email along to the other common share directors. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 134. Davis agreed to meet with ALQIMI on the condition that all parties understood that he would be attending as a Series A Investor (not as a director) and that he could share confidential information with Sharma and Carlin. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 135. Do confirmed that he understood Davis was meeting with Sharma and Carlin as an investor (not as a director) and that he could share confidential information with Sharma and Carlin. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence. Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 136. On March 12, 2015, Davis, Sharma, and Carlin met at the offices of Morrison & Foerster at 250 West 55th Street in New York City. *See* Def. Ex. 24 (Email exchange at ALQ_001282). | Assignees do not dispute this statement of fact for the purposes of this motion. Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 137. In responses to interrogatories, Davis made the sworn statement:<br><br>On March 12, 2015, [Davis] met with Defendant Sharma and Joseph Carlin in New York City in person. The original purpose of the meeting was for [Davis] to meet with Sharma and Carlin to discuss the proposed Alqimi Term Sheet. [Davis] had made it clear to all directors that he was not attending this meeting in his role as a fiduciary but in his role as a shareholder. The meeting quickly turned into a discussion about whether SFC had a future under [Robert Do's] leadership. At the meeting, the participants discussed moving [Robert Do] to a business development role and limiting his role in running the Company when his employment agreement expired on April 12, 2015. The participants also discussed working with Defendants Sharma and Alqimi to endeavor to sustain the business and the status of potential investors.<br><br>Def. Ex. 23 (Davis Interrog. Response at 18). | Assignees do not dispute this statement of fact for the purposes of this motion. Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

138. On March 12, 2015, Davis wrote an email to Art Samberg stating:

Meeting went from 3pm-6pm then went to dinner for another 2.5 hours. Went thru numerous scenarios - all of which entailed Robert moving to a biz dev role and not having anything to do with running the company. They are desperate to make that happen as they continue to think there is value there. ***They have a number of exciting electric generation project lined up but don t think Robert can get the gasifier across the goal line. They were never interested in buying us out they want to work with us Robert s idea to buy us out. I told them SFC doesn t benefit from electric project so why would I care they are fine rolling the electric license back into SFC from SGI so that SFC would benefit from this.*** They made a good point that one of their electric deals would serve as an effective pilot plant for the gasifier and would ultimately lower the technological risk. It was encouraging to hear they are in the same place we are with Robert. Robert s employment agreement is up April 12th and I will put together a proposal to move Robert over to biz dev or to have him leave if doesn t want that.

The big news is that British Air is voting next week on whether to put $8mm into the Greensky projects directly. Also, Robert believes (and Rajiv confirms) that there is a good change they will get the equivalent of $15mm from a UK agency as a grant to put up the plant. If one or both of these happen, I would suggest we reengage if Robert agrees to step aside. This would give us a fighting chance to get something done. Also discussed was that Dubai s latest offer is $10mm of equity and $20mm of secured debt.

Rajiv also offered to have the few worthwhile Salena employees come into his office space, fire the rest, lose the lease and work on getting top notch management. Interesting idea but they don t know the project management space so don t know how worthwhile that is. I am ulterior motives have something to do with the offer.

Assignees do not dispute this statement of fact for the purposes of this motion.

Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment.

43

| | |
|---|---|
| 139. Art Samberg replied to Davis' March 12 email with the following text: "Great update, worthwhile trip. Will reread with a fresh mind in the morning, but your conclusions seem to make sense." Def. Ex. 28. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

140. On March 13, 2015, Sharma emailed Do stating:

We had a cordial first meeting that both Joe and I considered a productive first step. We first discussed the term sheet and the reaction from Aryeh Davis. The investor position is still that the new term sheet is inadequate in terms of overall consideration. Without any current information, the investor expects a high cash offer and is not interested in equity or revenue share. In the absence of an adequate cash offer, Aryeh will explore the options that he has remaining, including allowing the company to go into bankruptcy or liquidation. There is no compelling circumstance or urgency for them to act. The investors next set of actions will be dictated by SFC management's response.

On the subject of information, Aryeh reiterated concern that they do not receive regular and consistent updates on project status, status of engineering and the general health of the company. Without any input from the company, there seems to be an acute concern as to the viability of the Solena Gasificaiton technology which leads to a greater concern as to the viability of the company as a whole. Since we were not in a position to give him any information, we told him that we would communicate these concerns to you.

The impression that Joe and I came away with was that Aryeh seemed reasonable and showed willingness to consider a wide ranging set of solutions and structures for future Series A participation or buyout. But Aryeh stressed that neither he nor the other Series A investors can engage in lengthy discussions at this time about these possibilities unless they are better informed.

In terms of next steps, Aryeh told us that he was going to reach out to you with a request for information. According to your SMS this morning, it seems like he has done that. For the moment we will step back and when Aryeh believes he has adequate information he will reach out to either you or Alqimi.

Def. Ex. 29.

Assignees do not dispute this statement of fact for the purposes of this motion.

Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment.

| | |
|---|---|
| 141. On March 15, 2015, Robert Do sent an email to the Board of Directors of SFC with the following text: | Assignees do not dispute this statement of fact for the purposes of this motion. |
| | Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

Members of the Board of Directors,

I want to follow up on the last few communications from some of the Series A investors and Board members, so that all BOD members is appraised of the current status of the Company:

1. Cash-Flow: As per our last update, the Company only had enough cash-flow on hand to last until the end of the February. After the last payroll on the 28th, the Company has used up the bridge funding provided by the new note-holders. All employees except the CEO are paid at that date. For the payroll of March 13, all employees payroll are deferred and accrued until there are additional bridge funding. The Company, already technically insolvent, is in default now on its payroll obligations, including two EAs, which can result in larger severance liabilities.

2. Bridge Funding and Term Sheet: The Alqimi group and its investors who have provided the bridge funding have submitted a TS to the Series A investors. Some progress on the TS discussion has been made with one of the Series A inventors. We hope that both parties can make headways as soon as possible so that we can allow for the new investors 10 provide additional bridge funding to keep the Company operational. All the potential bridge funders are waiting for a development regarding the TS before making further commitments.

3. Dubai as new investor: discussion is still going on with Dubai, a strategic investor and their investment is conditional to definition of the project in the region. They will not com1nit to invest in SFC or GSL without a project in Dubai.

4. GSL project: We are keeping the projects stakeholders on hold, and have been asking BA, Itochu, SITA to consider providing a loan fund to the project for FEED to stmt. BA is

46

| | |
|---|---|
| 142. After receiving Robert Do's email on March 15, Aryeh Davis and Art Samberg engaged in the following exchange over email:<br><br>Davis (March 15, 2:33 pm): "FYI… no specifics but enough to not get fired for cause. Pins everything on us agreeing to get bought out. What a putz! Thinking how and if I respond."<br><br>Samberg (March 15, 2:45 pm): "Why respond?"<br><br>Davis (March 15, 2:50 pm): "I am just trying to think if there is any reason to from a strategic standpoint. Can't think of one except to throw the question out there as to why working with the Series A rather than buy them out is out of the question. That u will not be able to raise enough to take us out so the company should consider ways to work together moving forward.<br><br>Samberg (March 15, 3:33 pm): "Try a reasonable argument with an unreasonable man?"<br><br>Davis (March 15, 3:37 pm): "not for him … the other directors…"<br><br>Samberg (March 15, 5:17 pm): "Don't they know where you stand? Silence with him would be most effective."<br><br>Davis (March 15, 5:19 pm): "Ok."<br><br>Def. Ex. 30 (AD_017741-42). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground the evidence does not support the proffered fact.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 143. On March 16, 2015, four days after the March 12 meeting, Sharma and Carlin made a $10,000 payment to Brian Miloski (then the CFO of SFC). Def. Ex. 31. (ALQ_018105). | Assignees do not dispute this statement of fact for the purposes of this motion. Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 144. The March 16, 2015, $10,000 cash payment to Miloski was characterized as a "Consulting Agreement" between Miloski and Sharma. Def. Ex. 31 (ALQ_018105). | Assignees do not dispute this statement of fact for the purposes of this motion. Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 145. Under the "Consulting Agreement," ALQIMI made a full "pre-payment," the parties never finalized a "Statement of Work" as required under the consulting agreement, and Miloski admitted that his responsibility under the consulting agreement "was just to continue doing work for SFC as I was." Def. Ex. 18 (Miloski Tr. at 113:5-115:4). | Assignees do not dispute this statement of fact for the purposes of this motion. Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 146. In a note thanking Sharma for the $10,000 cash payment, Miloski stated: "With gratitude, with gratitude. Here's to a wild couple of coming months…." Def. Ex. 32 (ellipsis in original). | Assignees do not dispute this statement of fact for the purposes of this motion. Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 147. On March 16, 2015, at 10 am, Joseph Carlin (General Counsel of ALQIMI) wrote an email to Aryeh Davis (cc to Sharma) with the text: "Good morning Aryeh – Rajeev and I would like to catch up with you sometime today to follow-up and see if you had any further thoughts and if you were able to brief your principal. Let me know if we could talk around noon or later. Thanks, Joe." Def. Ex. 33 (Email Exchange at AD_017722). | Assignees do not dispute this statement of fact for the purposes of this motion. Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 148. On March 16, 2015, Davis wrote to Art Samberg "Had a catch up call. Encouraged them to get a board seat so we can make a move on Robert. They are considering it. Left very vague as to whether we would fund anything if Robert was gone or moved." Art Samberg replied: "We can't seriously talk to anyone w/o making clear Robert has to go before we consider anything else." Def. Ex. 33 (Email Exchange at AD_017721). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 149. On March 18, 2015, ALQIMI made a loan to Kevin Lyle in the amount of $8,500 payable in six months. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

150. On March 22, 2015, Aryeh Davis wrote an email to Art Samberg with the following

text:

Busy Solena day...spoke to Avi Hoffer, Brain and Rajiv/Joe (Alqimi-the guys I met with last week) and email w/Kevin.

Some framework of a tentative plan to get the company moving in the right direction: Key elements/actions to note as follows:


• Without Robert knowing, Alqimi paid Kevin and Brian their salaries so they won't bolt (Alqimi won't pay money into Solena for Robert to piss away on employees he doesn't need and on his own high salary)


• Line up Mitch (one of the board members sympathetic to us) to vote Robert out of the CEO role and move him to Biz Dev (can give it a fancy title but he would no longer be in charge of project or running the company). We may want to wait until the end of his employment agreement on April 12 or we could just do it now and hope he accepts the move to Biz Dev.


• Combine the fuels and electric business under one roof to align interest our interests. This would involve a merger of some sort of SGI/SFC. I would need to be confident that the statute of limitations has run on all of the liabilities and there are no longer any IRS issues.


• Rajiv/Joe would immediately take over the company, take the worthwhile employees and fire the rest, and start the process of hiring to fill out the team with competent, hardworking individuals. Perhaps, if it made sense, I would temporarily join the management team on some part time level to help. I would have much preferred Colin and his team of engineers to do this but I have lost confidence in him stepping up - his emphasis on waiting until Robert is ready to move over isn't working. I told them for this work I would have to be confident that they would steer as much of the emphasis on the BA contract as on their

Assignees do not dispute this statement of fact for the purposes of this motion.

Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment.

50

| | |
|---|---|
| 151. Davis, Sharma, and Carlin arranged to meet in secret on April l, 2015, and they included Brian Miloski in the meeting. The meeting took place at ALQIMI's offices and lasted an entire day. *See* Def. Ex. 35 (Email Exchange at ALQ_004406); Def. Ex. 36 (Email Exchange at ALQ_004395); Def. Ex. 18 (Excerpt of Miloski Depo at 38:19 – 39:5). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 152. When Miloski he attended the April 1, 2015, meeting, he was serving as the Chief Financial Officer of SFC. Def. Ex. 18 (Excerpt of Miloski Depo at 38:22-39:1). Miloski testified that, as CFO of SFC, he owed duties of loyalty and candor to all shareholders and all members of the Board of Directors of SFC. *Id.* (Excerpt of Miloski Depo at 76:12 – 77:8). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 153. On April 1, 2015, Davis and Samberg had the following exchange over email:<br><br>Davis (April 1, 5:30 pm): Heading back to airport after a 7 hour session with Rajeev, Joe and Brian Miloski. Will send out a summary of the meeting tonight or tomorrow am after I have time to absorb.<br><br>Net net there may be something we can do here if we find a way to get Robert to cooperate and we can work out the value of respective contributions to the restructured company (including the combining the fuels and electric business).<br><br>We have given ourselves a deadline of April 23 of crafting a deal among ourselves and deciding on a strategy for convincing Robert to move aside. We are targeting April 23 to sit with Mitch, one of the other board members, to bring him into the tent and get his vote.<br><br>Again, I will give you a more detailed summary when I get in front of a computer.<br><br>Samberg (April 1, 6:09 pm): "All sounds good except for the reliance on Robert cooperating. Not his nature."<br><br>Davis (April 1, 6:17 pm): "Only reason not to tire him outright is our wanting to combine the fuels and electric under the SFC umbrella. If we get into bed with Rajeev and Joe, that is the only way our interests are aligned."<br><br>Def. Ex. 37 (AD_20893). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

154. The April 2, 2015, email from Davis to Samberg provided the detailed summary:

> As you know, I went down to DC yesterday to meet with Rajeev, Joe and Brian Miloski. Robert and the other Series A investors were not aware of the meet ing. The purpose of the meeting was to explore ways of working together to give Salena a chance of success. The following is a summary of the meeting and other pertinent information:
>
> Who are Rajeev and Joe?
>
> Rajeev and Joe are founders of the Alqimi group (http://www.alqimi.com ) that has three business lines (two of which are IT/Big Data Analytics related with the third being clean energy). According to Rajeev, they have a number of government contract for a lot of different agencies (e.g., one of things they are doing are tracking ISIS twitter accounts). Robert was the one who convinced them to follow him into the waste to energy space. Alqimi was an early investor in SGI, the predecessor of Salena Fuels and has since put more money into Solena Fuels either directly or thru a feeder into Salena Fuels (total across all entities is around $Smm). While still at SGI, Robert negotiated at least two joint venture agreements that I am now aware of. These joint ventures give them exclusive rights to develop both fuels and electric business in India and electric in the US (the profits split is 75% Alqimi and 25% SGI). Unknown to me AND Brian, according to Joe, for $500,000, Robert also gave them the non-exclusive rights to manufacture the gasifier for sale to others so if SFC decided to manufacture the gasifier as one of its revenue streams, we could be competing with them in selling the same gasifier. Robert is very much likeMax Bialystock in that he appears to have sold a lot of different rights to various people over the years - some of which conflict or at a minimum reduce the value of SFC (i.e., we don t have exclusive rights to manufacture the gasifier). Rajeev indicated he and Joe were very angry when he was informed after the fact that Robert stripped SGI of the rights to do fuels and almost sued Robert at that time.
>
> I asked the question of why Alqimi, for its existing electric

Assignees do not dispute this statement of fact for the purposes of this motion.

Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment.

53

| | |
|---|---|
| 155. Jeff Samberg immediately responded: "I'll try to read through this later, but I'm basically ok with any scenario that doesn't involve us putting up more capital." Def. Ex. 38 | Assignees do not dispute this statement of fact for the purposes of this motion. |
| | Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 156. On April 3, Art Samberg wrote to Davis: | Assignees do not dispute this statement of fact for the purposes of this motion. |
| This one makes my head ache. To add insult to injury he had been pulling a Producers bit on us? How much do we have in it? Might be easiest to just walk away. | Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| Doesn't help that you characterize Rajeev as a salesman. Or that there seems to be a need for $1mm, which I presume they would want us to put up. Or that this really can't be done by just firing Robert. And what's with the new gauche made by another company. | |
| I admire your efforts to recoup some of our capital but on a time weighted, risk adjusted basis i'm not sure it is worth it. | |
| Def. Ex. 38 (AD_017651-52). | |

| | |
|---|---|
| 157. Davis Responded:<br><br>I figure I can give it a hail Mary to see if we can get something done this year. The $1mm is what I mentioned to you- only put in as needed and only if we see tangible progress. Certainly understand if you don't want to put any more money into this but it we are going to try, I figure that is what it would take. If not this doesn't work out by year end, we write it off by the end of the year if not sooner.<br><br>Def. Ex. 38 (AD_017651). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 158. Art Samberg responded:<br><br>Appreciate the effort, appreciate the hail mary aspect. The fact that Robert hands around bothers be. He is evil, and I don't line dealing with evil people. We need clear signs of progress before we put a dime in. As it stands it sounds like the Iran deal - no specific penalties for not living up to the agreement along the way. Can we tighten that up?<br><br>Def. Ex. 38 (AD_017651). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 159. Davis responded:<br><br>Hate to use another Obama analogy but I have a very bright red line. If he is in charge, we don't move forward with funding. If we cannot find a way to align with Rajeev, we don't hand over the company to him or fund anything.<br><br>I don't give this a high probability of succeeding but we put in $7-8mm and, while we made progress in the beginning with getting the BA deal, once it came to running a project, we grinding to a halt and ran out of money. Very frustrating.<br><br>Def. Ex. 38 (AD_017651). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 160. During the meeting in Rosslyn on April 1, 2015, Miloski used his personal gmail account to send Davis a copy of the SFC-SGI Exclusive License Agreement. *See* Def. Ex. 40 (Email Exchange at AD_012154). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 161. On April 2, 2015, Miloski sent an email from his personal gmail account to Davis in which he discussed his loyalty to SFC: "I have over invested in Solena and it is time for me to cut my losses." Def. Ex. 41 (Email from Miloski to Davis). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 162. Davis, Sharma, Carlin and Miloski discussed two different ways to deal with SGI's license: they could negotiate with SGI and their partners, or they could go the "termination of license route." Def. Ex. 16. (Excerpt of Davis Depo at 285:5-10). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 163. Taking directions from his principal, Samberg, Davis decided to terminate the License Agreement so that he would not have to negotiate with SGI and SGI's partners and would not need the Robert Do's cooperation. *See* Def. Ex. 16. (Excerpt of Davis Depo at 285:5-10). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground the evidence does not support the proffered fact.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 164. On April 3, 2015, Davis emailed his counsel at Morrison Foerster and provided a copy of the License Agreement. He wrote, "Can we terminate this license in a Chapter 11 of SFC? What would we need to do to terminate this license if SGI is insolvent? What is an insolvency procedure (8.03)?" | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 165. Davis considered termination of the License Agreement as an option to return value to SFC. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 166. On April 6, MoFo attorney Chip Lion forwarded an email from MoFo attorney Larry Engel an added the text: "I asked Larry Engel to weigh in on the BK issue, here is his email to me. Do you want to followup with Larry directly?" *See* Def. Ex. 42. (Email Exchange at MOFO_003342-43). Less than 10 minutes later, Davis responded via email with the text: "Thanks. No need [for follow-up]. I think the short answer is no, we cannot cleanly terminate the license so that is all I need to know." Def. Ex. 42 (Email Exchange at MOFO_003342). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 167. On April 6, 2015, Davis sent an email to Miloski's personal gmail account asking Miloski to send him SFC corporate documents that he needed to execute the illegal plan. Def. Ex. 43 (BCM_003861). On the same day, Miloski responded by attaching a copy of the corporate documents that Davis requested. Def. Ex. 44 (Series A Preferred Stock and Warrant Purchase Agreement (ALQ_000300)). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground the evidence does not support the proffered fact that there was any sort of "Illegal Plan."<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 168. By April 6, 2015, the Series A Investors agreed that the company could not continue with Do as CEO and President and they considered options for his removal, including persuading the independent director to vote with them to remove Do. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 169. On April 6, 2015, Davis wrote to the other Series A Investors and proposed to convert the Series A shares to common stock to vote in a new set of common directors. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 170. On April 6, 2015, Davis emailed counsel to discuss whether the Series A Investors could convert their preferred shares to common shares and vote a new slate of directors to remove Do. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 171. As of April 7, 2015, Dr. Do still believed that Sharma and Carlin were negotiating on his behalf with Davis. On April 7, 2015, Dr. Do asked Carlin and Sharma to communicate with Davis and request a response to the proposals in the ALQIMI Consortium Term Sheet. In response to Dr. Do's request on April 7, Carlin engaged in a charade designed to mislead Dr. Do. On April 8, 2015, Carlin drafted a sham email and circulated it to Dr. Do and Sharma for comment as if it were a genuine email. Def. Ex. 26 (ALQ_010816-17); Def. Ex. 45 (ALQ_004378). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground the evidence does not support the proffered fact.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 172. On April 8, 2015, counsel provided Davis with a blueprint for converting shares and removing Do consistent with the governing documents and statutory and common law. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 173. On April 9, 2015, Davis wrote again to Morrison Foerster asking "How does an insolvency proceeding get initiated? A bankruptcy proceeding? Who initiates these?" | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 174. On April 9, 2015, at 10:17 am, Carlin sent an email to Davis explaining the subterfuge: "Heads up – will be sending an e-mail that Robert wanted sent in connection with the last Special Committee meeting. We obviously don't agree with the premise but did not at this time want to stir the pot and potentially tip our hand by formally withdrawing at this stage." Def. Ex. 45 (ALQ_004378-79). A few minutes later Carlin sent the sham email to Davis (copy to Dr. Do). Def. Ex. 46 (ALQ_001736-37). Davis continued the charade by disingenuously responding to Carlin's April 9 email and setting forth his own sham "conditions" which were also designed to mislead Dr. Do. *Id.* One of the sham conditions was that his principal Art Samberg would "[o]btain the license to develop electric projects currently held by SGI and contract directly with SGI partners (Alqimi, Italians, etc.). We understand we would need to negotiate a fair deal with some or all of SGI's joint venture partners." *Id.* (ALQ_001736). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground the evidence does not support the Defendant's characterizations, which are not factual statements but argument.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

175. On April 9, 2015, Davis sent an email to Art Samberg and Jeffrey Samberg with the following text:

> With your permission, I would like to send the following response to the email below on April 13th, the day after Robert's employment agreement expires. In my view, it is time to get aggressive and find out one way or the other if anything is going to happen here. Currently, he is going on fumes and at best is getting just enough funding to get to the next payroll and cover his lifestyle (he just got back from the Dominican Republic from vacation). While the BA money is coming in, I much of it will need to stay in GreenSky London as opposed to paying SFC costs. ***If he reacts negatively, we have a leverage point in our back pocket that I thought of last week (which I have now confirmed with counsel). if we and the other large Series Preferred holders were convert to common stock, we can take over the board and do whatever we want with the Company.*** We need to determine who will be interim CEO and figure out what we want to do with the business but the knowledge that we have this ace in the hole may give Robert some food for thought.

> The reference to funding would be up to $1rnrn paid in tranches on a totally optional basis and only if we like the progress being made.

> Thank you, Joe.

> I appreciate the clarification on the $10mm. When you say "the amount currently being discussed by consortium members with the investor", who exactly are these consortium members with and who is the investor? Will this consortium be investing in the Company? Is Alqimi leading that consortium and is that why you are the one sending this email? It is hard to make any kind of intelligent decision unless I know all of the facts.

> Our conditions to continue funding the Company are as follows :

> 1. Appoint an interim co-CEO to run the Company and the BA project until a new co-CEO is found. We would want Robert to stay involved in the Company as co-CEO in charge of business

Assignees do not dispute this statement of fact for the purposes of this motion.

Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment.

61

| | |
|---|---|
| 176. On April 9, 2015, Davis sent an email to counsel at MoFo that included the text: "I am trying to figure out a way of terminating the license. Any creative ideas would be appreciated." *See* Def. Ex. 48 (Email Exchange at MOFO_002341). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 177. On April 10, 2015, MoFo attorney Larry Engel sent an email to Davis that included the text:<br><br>When the contract references insolvency besides bankruptcy, you could send a termination notice alleging insolvency. Usually this strategy begins with a notice saying we think you are insolvent under that termination paragraph, and if you don't convince us within 10 days of your solvency, consider this a notice of termination for insolvency effective on the 10th day. You then state your causes for believing insolvency for them to rebut.<br><br>This has several tactical concepts. First, we find out if they are going to fight us or give up. This is going to be a fight, they may sue or file for bankruptcy to preempt and stay the termination (362/365(e)), and you can make your counter moves in that context. If they show no signs of a fight, you can terminate, and to confirm that result you can sue for declaratory relief and take your quick and cheap default judgment. Second we put pressure on them to do something and give us useful data for other tactics, like discovering which creditor are out there with useful claims to buy.<br><br>*See* Def. Ex. 48 (Email Exchange at MOFO_002340-41). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 178. On April 11, 2015, at 9:14 pm, Davis sent an email to Art Samberg with the following text: "Just an FYI& I am also trying to figure out a way of terminating the license. If I am able to figure it out and we can back the electric without Robert s consent, we could eliminate any need for Robert." Def. Ex. 47. In response, Samberg wrote: "I support whatever you can do to get him out of there. There is no future with him there." Def. Ex. 47 (Email Exchange at AD_017460). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 179. On April 11, 2015, Davis sent an email to Wenzel and Hoffer with the text: "I think I also figured out a way of terminating the electric license. Time for hardball." *See* Def. Ex. 49. (Email Exchange at RW_013341). Avi Hoffer responded: "That would be great!!!" *Id.* Richard Wenzel responded: "Yeah, time to bring the heat, circle change, then more heat." *See* Def. Ex. 50 (Email Exchange at RW_013345). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 180. Davis testified as follows: "Q. Did Mr. Sharma, Mr. Miloski, Mr. Wenzel and Mr. Hoffer agree to terminate the license? A. Yes." Def. Ex. 16 (Excerpt of Davis Depo at 285:15-286:1). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 181. On April 11, 2015, Carlin took Miloski out for a round of golf and drinks. The next day, Miloski sent Carlin a confidential report on the SPGV gasifier. Def. Ex. 51 (ALQ_004306). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground the evidence does not support the proffered fact.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 182. On April 12, 2015, Samberg and Davis engaged in the following email exchange:<br><br>Samberg (April 12, 10:02 am): "What are the terms of my loan to him?"<br><br>Davis (April 12, 10:41 am): "Comes due in August. Plan to file suit after it is due if ok with you."<br><br>Samberg (April 12, 11:02 am): "Thrilled by it."<br><br>Def. Ex. 52. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 183. On April 12, 2015, Davis reached out to Larry Engel, a bankruptcy lawyer about conditions that he believed rendered SGI insolvent. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 184. On April 12, 2015 that Davis emailed the other Series A Investors and suggested terminating the License Agreement. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 185. On April 13, 2015, Carlin sent Davis (copy to Sharma) an email attaching documents that described SGI's ongoing business activities, including a document describing the Joint Ventures between ALQIMI and SGI, as well as a copy of the November 2014 License and Manufacturing Agreement between SGI and ALQIMI. *See* Def. Ex. 53 (Email Exchange at ALQ_000232). These documents were never sent to MoFo. | Assignees do not dispute this statement of fact for the purposes of this motion. Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

186. On April 13, 2015, Davis sent an email to Art Samberg with the following text:

Sent just now. First salvo.

Next steps over the next couple of weeks:

• the preferred stockholders (other than the small holders) convert their preferred to common stock to take control of the common stock vote.

• submit a written consent of the majority of the common holders clearing out the old board and installing a new board. We need to figure out the size of the new board and who will be on it. I would prefer Avi and Dick not be on it (make them observers) and that it be limited to 3. Perhaps have Rajeev on the board if we do get into bed with him.

• *Same day as we take over the board, we send a letter to SGI telling them that we understand they are insolvent and that if they can't refute the understanding within 10 days, we will terminate the license for the electric projects. If they don't fight us, we file for a declaratory judgment confirming the termination. In the unlikely event they come up the money to litigate, we should have a good chance of winning in court.*

*This is likely to get messy but I am not sure we have anything to lose at this point (except legal fees and some funding of the company if we take it over - again, up to $1mm and over time in tranches). Based on your emails over the weekend, it sounds like you are ok with it.*

The biggest flaw in the plan is who will act as interim CEO - I think Brian and Kevin (the project manager) could do the job on a short term basis (and Rajeev on the board) or we can go with the Rajeev/Joe as CEO with Brian and Kevin being top lieutenants with lots of leeway to do their job. I may call Valerie/Francisco and see if she has any ideas. If we wait for the perfect candidate, Robert will continue to run the company into the ground - seems like we need to go for it and see what

Assignees do not dispute this statement of fact for the purposes of this motion.

Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment.

| | |
|---|---|
| 187. Davis testified at his deposition: | Assignees do not dispute this statement of fact for the purposes of this motion. |
| • "We spoke to Morrison & Foerster to have them evaluate the power license and decide whether the power license could be terminated. And they gave us advice it could be terminated, so we terminated it." Def. Ex. 16 (Excerpt of Davis Depo at 170:14 – 171:11). | Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| • "We wanted to bring the power into Solena Fuels for the shareholders and for the credit holders, to create value within Solena Fuels." Def. Ex. 16 (Except of Davis Depo at 171-21 – 172-2). | |
| • "There was no obligation to -- there was no obligation to pay SGI. It was termination of a license." Def. Ex. 16 (Except of Davis Depo at 172:7 -9). | |
| • "We spoke to Morrison & Foerster, and if the license agreement was terminated, it would have been Solena Fuels property, in which case, we would have done whatever we wanted to in the electric business." Def. Ex. 16 (Except of Davis Depo at 181:4 – 8) | |
| • "**Q**. Did you want to make sure that Robert did not compete in the power business with Solena Fuels Corporation? **A**. I don't specifically remember why we did it, but we were clearly -- clearly were trying to affect his behavior. **Q**. How were you trying to affect his behavior? **A.** I don't specifically remember how. Certainly to behave himself, to go along with what we were doing, possibly -- possibly take an alternative role at Solena Fuels." Def. Ex. 16 (Except of Davis Depo at 173:19 -174:8) | |
| • "If the license was terminated, Morrison & Foerster told us we could pursue the electric business." Def. Ex. 16 (Except of Davis Depo at 181:21 – 182:1). | |

67

| | |
|---|---|
| 188. On April 14, 2015, Davis stated that he was going to include the other Series A Directors Wenzel and Hoffer in the plan to scheme to combine the biofuel and biopower businesses of SFC and SGI. Def. Ex. 55 (ALQ_000231) ("Since this is getting real, I will need to bring Avi and Dick into this sooner than later if they are going to sign up for combining businesses."). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground the evidence does not support the Defendant's characterizations, which are not factual statements but argument.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 189. On April 15, 2015, Davis sent an email to MoFo attorney Larry Engel with the following text: "How confident are you that, assuming SGI is insolvent under all of the relevant definitions, the language in the agreement allows us to terminate the agreement? That the letter and declaratory judgment (or resulting litigation) will result in us having the license." Def. Ex. 56 (Email Exchange at MOFO_002144). Mr. Engel provided an email response later that afternoon with the following text: "Bottom line, the result is debatable if they really want to fight but there is not much to lose in threatening them in the letter. More if you wish to talk. Thanks." *Id.* (Email Exchange at MOFO_002143). Davis then forwarded Mr. Engel's response to Chip Lion and added the text: "this doesn't seem like a slam dunk. . ." *Id.* (ellipsis in original). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 190. On April 15, 2015, Davis forwarded the Engel email to Samberg and stated: "Like I indicated, this is going to get ugly and none of this is not [sic] a slam dunk. I am hopeful he won't have the funds to defend himself." Def. Ex. 57 (AD_017423). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 191. On April 16, 2015, Davis sought legal advice from MoFo attorney Larry Engel about whether an IRS tax collection proceeding could be considered a "proceeding" under the SGI License agreement and provide grounds for terminating the license. Def. Ex. 58. (Email Exchange at MOFO_002113). Engel replied: "As to your question, no I don't see the IRS tax collection proceeding as an "insolvency . . . proceeding. Sorry. If we want to create an insolvency proceeding, I can suggest some other possibilities . . . ." *Id.* | Assignees do not dispute this statement of fact for the purposes of this motion. Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 192. On April 19, 2015, MoFo attorney Larry Engel sent an email to Davis with the text: "If you have a creditor claim or shareholder position and you could prove insolvency, you could also apply for the appointment of a receiver for GSI [sic] under Delaware Corporations Code 291 et seq as ancillary relief connected to another qualified action." Def. Ex. 59 (Email Exchange at MOFO_001949). Later that day, Davis responded by email with the text: "I am not sure I understand the purpose of this . . ." *Id.* (ellipsis in original). | Assignees do not dispute this statement of fact for the purposes of this motion. Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 193. On April 20, 2015, MoFo attorney Larry Engel sent an email to Davis with the text: "Your termination right is triggered by any of proceeding involving insolvency, receivership or bankruptcy (or cessation of business)." *See* Def. Ex. 59 (Email Exchange at MOFO_001949). | Assignees do not dispute this statement of fact for the purposes of this motion. Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 194. On April 20, 2015, Davis, Sharma, Carlin, Miloski, Wenzel and Hoffer met in secret at ALQIMI's offices. *See* Def. Ex. 16 (Excerpt of Davis Depo at 285:15-286:1). | Assignees do not dispute this statement of fact for the purposes of this motion. Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 195. Following the April 20 meeting, Davis sent an email to Art Samberg and Jeff Samberg with the following text:<br><br>Good progress yesterday. Achieved the main goal of getting Avi and Dick to meet Rajeev and Joe and for all of us to get comfortable. The main take aways are the following:<br><br>• As to the direction of the company, the consensus around the table was to pursue the British Air project but to derisk it by using by such means as using existing proven gasifier and to phase in various parts of the project (as opposed to trying to get the whole plant up and running in one shot), e.g., start by putting up a gasifier that produces electric that will ultimately be used to power the plant, then add on components until we ultimately get to the FT unit and jet fuel production. It is slower but reduces the risk and increases the chances of someone wanting to finance each phase.<br><br>At the same time, we want to develop a smaller gasifer (5 ton as opposed to 20 ton which was to be used on the BA project) so that Alqimi can use it in their Hawaii electric project and SFC can use it as our reference pilot gasifer. They would also use it for their India projects (with the possibility of SFC manufacturing it in India). Once we are sure the smaller one works, we would attempt to scale it up for the larger fuels projects<br><br>• Consensus was to move forward with taking over the board - Probably on May 4<br><br>• Consensus was that we should attempt to keep Robert in a different role that doesn't involve managing the project or the company as this would help with transition. However, if he becomes disruptive (and he will be), we get rid of him<br><br>• We are still working out who to keep and who not to keep and will have a projected budget shortly. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

70

| | |
|---|---|
| 196. On April 21, 2015 ,Miloski sent an email from his personal gmail account soliciting a $12,393 payment from Davis and Davis' principal Art Samberg. *See* Def. Ex. 61 (BCM_003647, 3609). Art Samberg agreed to make a payment to Miloski in the amount of $12,393. *See* Def. Ex. 18 (Excerpt of Miloski Depo at 111:4-7, 158:17-22). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground the evidence does not support the proffered fact.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 197. On Thursday April 23, 2015, Davis, Sharma, Carlin, Miloski, Wenzel and Hoffer met again in Washington for nearly 12 hours. Def. Ex. 62 (AD_020766). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 198. On April 24, 2015, Miloski sent an email from his personal account to Davis, Wenzel, Sharma and two others with the subject line: "Punchlist attached." Def. Ex. 63 (Punchlist). Miloski's Punchlist listed the tasks necessary for the execution of the Illegal Plan and identified which co-conspirator was responsible for which task. *Id.* The first item on Miloski's Punchlist was to obtain control of SFC and SGI's biopower license. *Id.* | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground the evidence does not support the Defendant's characterizations, which are not factual statements but argument.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

199. Shortly after receiving Miloski's punchlist, Davis forwarded the punchlist to Art Samberg along with an email describing the 12-hour meeting in Washington DC and acknowledging that the plan had a small probability of success, was likely unlawful, and would not survive a legal challenge by Robert Do:

Long, productive meeting yesterday (pretty much 12 hours). Overall strategy remains the same – pursue the British Air project but take steps (in conjunction with BA) to de-risk the project (including looking at an alternative gasifier). In parallel, pivot on the gasifier FEED to scale it down to a 5 ton/hr Gasifier (vs. 20 ton/hr to be used at BA project) so that we can get it up and running in the Hawii electric project and use it as our reference plant/pilot. We will use the data from this pilot to help us scale the 5 ton to a 20 ton for use in future fuels projects. *Once we have a 5 ton gasifier that works, we will also pursue electric project thru Alqimi.*

*As I have said before this is going to be very nasty and messy and there will be some things that we won't be able to anticipate or prevent, including litigation and irrational behavior.* We are trying to anticipate and mitigate but it won't be perfect. For instance, BA may say that given the management shakeup, they are suspending or cancelling the agreement with Solena. Another example is 3 creditors may try to throw us into involuntary bankruptcy (which may mean we have to go thru Chapter 11 and this could hamper our ability to use tier 1 vendors who may be leery. *The list goes on but we are hoping that Robert does not have the funds to fight us legally.*

\* \* \*

The general consensus of the group is that we have little to lose by taking over the board. We all believe BA project will never get done on Robert's current path as the risk level is very high. *As noted, the path we are taking is fraught with risk but we have the contractual right to take over the board and the have the right as board members to take certain steps so long as we use reasonable business judgment. If we do it right, we may be able to salvage something good out of this. I don't give it a high*

Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground the evidence does not support the Defendant's characterizations, which are not factual statements but argument.

Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment.

72

| | |
|---|---|
| 200. In response to Davis' warning that "this is going to be very nasty and messy and there could be some things that we won't be able to anticipate or prevent, including litigation and irrational behavior," Art Samberg responded with the text: "if there is a fight to pick this is it." Def. Ex. 62 (AD_020766). Davis replied with the text: "ok. I have sufficiently warned you about possible blow back and litigation. We are on the side of angels!" *Id.* Art Samberg replied "if my name has to attached to a messy situation this is the ideal candidate." *Id.* | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 201. On April 24, 2015, Davis sent an email to his outside counsel at Chip Lion MoFo stating: "I don't want Joe [Carlin] or Brian [Miloski] to take any action for liability reasons. Chip – By the way, can Brian get sued over his actions as an employee helping us? Is he indemnified?" Def. Ex. 64 (MOFO_01828). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 202. On April 27, 2015, Davis sent an email to three Mofo attorneys:<br><br>Guys- need two letters (hopefully drafted by Shannon to keep costs down).<br><br>1. Letter to Solena Group Inc. indicating that we understand SGI is insolvent and we are terminating the license in 10 days unless they provbe othersie [sic].<br><br>2. Letter to Robert Do advising him that he has obligations under the employment agreement and confi (including non-solicit). also, we have become aware he is transferring SFC know how to persons/entitys no [sic] on behalf of SFC (he is working on SGI projects) and he must cease and desist passing on the knowledge and shall not contact vendors, clients, etc…<br><br>*See* Def. Ex. 65 (Email Exchange at MOFO_006381-82). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 203. On April 27, 2015, Miloski sent an email to Davis demanding that he be made President of the SFC following the takeover. In order to ensure Miloski's continued participation and cooperation in the scheme – which Davis acknowledged the co-conspirators "very much need" – Davis, et al agreed to Miloski's demand to be named interim President of SFC following the takeover. Def. Ex. 66 (BCM_003727); Def. Ex. 67 (ALQ_004127). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground the evidence does not support the Defendant's characterizations, which are not factual statements but argument. <br><br> Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 204. On April 27, 2015 at 12:42 pm, Davis wrote to Carlin, "How are you guys doing? Still committed? Any intel from Robert?" A few minutes later Carlin wrote back that they were in fact committed. Carlin explained that Sharma will be in London on May 10 ready to meet BA on the 11th or 12th, then he will "take a train to Paris and talk to Sylvan and also Yves Bannel and then on to Rome to meet the Italians again, explain the situation and see if they could bring them on board. We will need to coordinate Brian reaching out to BA, Sylvan and the Italians shortly after the deed is done ***so that we can try to stay ahead of Robert***." Def. Ex. 68 (emphasis added). | Assignees do not dispute this statement of fact for the purposes of this motion. <br><br> Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 205. Davis then wrote to Art Samberg to get permission to join Sharma and Miloski in London to which Samberg replied "I am fully supportive of your doing whatever you think makes sense to make/preserve on our capital. You can make decisions by yourself, you have my full trust." Def. Ex. 68 (AD_017400). | Assignees do not dispute this statement of fact for the purposes of this motion. <br><br> Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 206. On April 28, 2015, MoFo attorney Chip Lion transmitted via email a draft termination letter to Davis with the text: "As you know, Larry has done not any due diligence as to these facts. He extrapolated from what he heard in passing from your prior conversations." *See* Def. Ex. 69 (Email from Lion to Davis at MOFO_001529). The email also included the text: "As noted in prior emails, the License Agreement § 8.03(i) termination requires a 'proceeding,' related to receivership or insolvency, that is not dismissed within 60 days, so we will need to arrange for a Delaware follow up filing to technically fall within Section 8.03(i) because we think the 'cessation of business' reason is tenuous." *Id.* | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 207. On April 29, Davis emailed the draft termination letter to Sharma, Carlin, Hoffer, Wenzel and Miloski, pasted some of the text from Lion's April 28 email, and added the text: "Rajeev/Joe/Brian - The facts need tweaking and you are most familiar with this…. Please let me know your comments ASAP." *See* Def. Ex. 70 (Email Exchange at MOFO_001144-45). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 208. On April 30, 2015, Davis wrote an email to Chip Lion that included the following text: "Is currently working on a project with Pertimina which is an electric project using SFC assets which we plan to stop now." *See* Def. Ex. 71 (Email Exchange at MOFO_001390). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 209. Sharma agreed to sign the termination Letter because Davis believed "it is significantly more devastating if it comes from Rajeev (who is much more likely to have knowledge." *See* Def. Ex. 70 (Email Exchange at MOFO_001144-45). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 210. On May 7, 2015, Richard Wenzel wrote an email with the text: "Rajeev [as signatory] makes perfect sense. About CC Yves – may tell RDo that SFC recognize same as 'responsible person of SGI authority', not RDo, and potentially relieves some pressure and diminishes the shock value the letter delivers? Tougher for the fragile to be alone in the ring than not." *See* Def. Ex. 72 (Email Exchange at MOFO_001103). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 211. On May 8, 2015, at the request of Davis, Miloski sent an electronic copy of SFC's letterhead to an attorney at Morrison& Foerster. Def. Ex. 73 (MOFO_001055). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 212. On May 8, 2015, Sharma emailed Miloski, Carlin and Davis and discussed his desire to schedule meetings with certain entities and people "before Robert can engage them and try to put his spin on the situation." Def. Ex. 74 (ALQ_000159). Sharma expressed his desire to meet with British Airways, Sylvain Motycka, Yves Bannel and the "Italians." *Id.* | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 213. On May 8-10, 2015. Robert Do and Sharma engaged in the following email exchange:<br><br>From Sharma on May 8, 9:19 am: "I am going to be in London on [sic] next Tuesday and Wednesday and was going to see if I could catch up with Jonathon and Jim [from British Airways]. Do you know if they are available?"<br><br>From Do on May 9, 7:31 pm: "It looks like both Jim and Jonathon could make it Wednesday AM on London. I am cc both so you can coordinate time and location."<br><br>From Sharma on May 9, 8:30 pm: "Thanks Robert, I will coordinate from here."<br><br>From Do on May 10, 8:50 am: "Ok, but let's have a chat on Tuesday so I can prep you re what is going on w BA and how your mtg could be helpful."<br><br>Def. Ex. 107 (ALQ_010794). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence as the evidence relied upon does not support the assertion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 214. On May 11, 2015, Joseph Carlin provided Robert Do with a memorandum prepared by Morrison Foerster detailing steps the Series A Shareholders were taking to effectuate a change in control of SFC. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 215. On May 11, 2015 the Series A Investors converted 8,724,259 shares of Series A preferred stock to common stock (the "Conversion Shares") as permitted by the Amended and Restated Certificate of Incorporation of the Company, dated September 24, 2013 (the "Charter"). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 216. On May 11, 2015, Art Samberg owned 568,964 shares of Common Stock in SFC. Def. Ex. 75. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 217. On May 11, 2015, Miloski owned 500,000 shares of Common Stock in SFC. Def. Ex. 75. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 218. On May 11, 2015, Kelsey Intertrading Corporation owned 279,932 shares of Common Stock in SFC. Def. Ex. 75. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 219. On May 11, 2015, ALQIMI GE&F Holdings, LLC held 853,118 shares of common stock. Def. Ex. 75. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 220. Following the Preferred Series A conversion on May 11, 2015, Richard Cohen held 394,104 shares of common stock and 132,212 Series A Preferred Shares. Def. Ex. 75. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 221. Following the Preferred Series A conversion on May 11, 2015, Greenfuel Technology LLC held 2,103,936 shares of common stock and 705818 Series A Preferred Shares. Def. Ex. 75. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 222. Following the Preferred Series A conversion on May 11, 2015, Samberg Family Foundation, Inc. held 328,420 shares of common stock and 110,176 Series A Preferred Shares. Def. Ex. 75. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 223. Following the Preferred Series A conversion on May 11, 2015, SGNA, LLC held 3,718,386 shares of common stock and 1,247,425 Series A Preferred Shares. Def. Ex. 75. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 224. Following the Preferred Series A conversion on May 11, 2015, Davis held 72,241 shares of common stock and 24,235 Series A Preferred Shares. Def. Ex. 75. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 225. Following the Preferred Series A conversion on May 11, 2015, Acadia Woods Partners, LLC held 1,056,937 shares of common stock and 354,576 Series A Preferred Shares. Def. Ex. 75. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 226. Following the Preferred Series A conversion on May 11, 2015, GA Development, LLC held 787,499 shares of common stock and 264,186 Series A Preferred Shares. Def. Ex. 75. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 227. Following the Preferred Series A conversion on May 11, 2015, San Development Company, LLC held 65,684 shares of common stock and 22,035 Series A Preferred Shares. Def. Ex. 75. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 228. Following the Preferred Series A conversion on May 11, 2015, ZLC Investments, LLC held 197,052 shares of common stock and 66,106 Series A Preferred Shares. Def. Ex. 75. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 229. The Conversion Shares, together with the shares of common stock already owned by Art Samberg, Richard Wenzel and Brian Miloski caused them to hold the majority of both common shares and Series A preferred shares in SFC. Def. Ex. 75; | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 230. On May 11, 2015, the Series A Shareholders exercised their authority to remove and replace the Common Directors, remove and replace the Independent Directors and confirm the Series A Directors. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 231. On May 11, 2015, the Series A Shareholders exercised their authority to amend the bylaws to (1) change the quorum requirements and (2) split the position of President and CEO | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 232. On May 11, 2015, the re-constituted Board removed Dr. Do as President and CEO and replaced him with Sharma as CEO and Miloski as president. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 233. On May 11, 2015, Carlin presented a letter to Do (the "First Sharma Letter" or "Termination Letter") which stated on page 4:<br><br>Effective when and as soon as permitted by such applicable provisions of the License Agreement for such termination to become effective, without Licensee expecting any further notice or demand, Licensor hereby notified Licensee of termination of the License Agreement provided as follows:<br><br>1. on account of Licensee ceasing to do business, causing termination in accordance with License Agreement § 8.03(iii) ***upon this notice***;<br><br>2. on account of the insolvency proceeding and/or receivership proceeding to be soon instituted by Licensor against Licensee in accordance with License Agreement § 8.03(i), effective upon the 60th day thereafter each such event; and<br><br>3. on account of any breach by Licensee in accordance with License Agement § 8.02, following notice thereof by Licensor and any applicable 30-day cure period.<br><br>*See* Def. Ex. 76 (Letter to Robert T. Do on May 11, 2015 (hereinafter "Termination Letter") at 4) (emphasis added). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 234. Plaintiffs believed that they had terminated the License Agreement on May 11, 2015. *See* Def. Ex. 16 (Excerpt of Davis Depo at 170:14 – 171:11) ("We spoke to Morrison & Foerster to have them evaluate the power license and decide whether the power license could be terminated. And they gave us advice it could be terminated, so we terminated it."); Def. Ex. 18 (Excerpt of Miloski Depo at 220:3-8) ("At that point in time, that's what I believed."). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.  Specifically, Defendant makes an undefined reference to "Plaintiffs," which is not supported by the cited evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 235. Sharma delivered a second letter (the "Cease and Desist Letter") to Do on May 11, 2015, in order to intimidate Dr. Do and pressure him into giving up his claims and abandoning his rights to the SGI Bio-Power Products. Def. Ex. 77 (Cease and Desist Letter). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground the evidence does not support the Defendant's characterizations, which are not factual statements but argument.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 236. SGI shared office space with SFC, and all of SGI's files and computer servers was maintained in SFC's office. Def. Ex. 3 (Rule 30(b)(6) Depo of SGI at 29: 3-9, 143:11-13). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 237. Plaintiffs arranged for a private security firm to come to SFC's offices on May 11, 2015, and prevent Dr. Do from accessing the office or SGI's files. Def. Ex. 78 (RW_012379). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 238. On behalf of the Plaintiffs, Miloski and Wenzel worked together to gather all of SGI's property (including designs, engineering reports, and know-how), load it onto a truck, and deliver it to ALQIMI's offices in Rockville, Maryland. Def. Ex. 79 (RW_001654). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 239. Despite several demands to return SGI's business property, Plaintiffs did not do so. Def. Ex. 80. SGI could not pursue the sale of its bio-power products on its own or through its joint venture partners after May 11, 2015, without the engineering plans that it had spent millions of dollars creating which contained the conceptual design of the bio-power products. Def. Ex. 3 (Rule 30(b)(6) Depo of SGI at 338:12-19). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 240. The SGI files that were sent to ALQIMI's office included all of the engineering plans and data necessary for SGI to pursue its bio-power projects. For example, the SGI files sent to ALQIMI contain all of the feasibility studies, engineering reports, heat & mass balance analyses, power generation studies, designs, and financial models that were identified in SGI's presentation to Pertamina on February 5, 2015. Def. Ex. 81 (RDo_002830). Other critical files included: Other files included: (i) Conceptual design of small scale, pre-fab, modular, bio-power systems ("Kits"); (ii) Technical data; (iii) Block Flow Diagrams; (iv) Heat mass balance analyses; (v) Equipment Footprint and Site Area analysis; (vi) Waste Analysis-Optimization (MSW to RDF Process/Thermal Drying); (vii) Design of Control Systems; (viii) Value Engineering Plans; (ix) FEED; (x) Financial Modeling; and (xi) Financial Budget/Costing. Def. Ex. 82. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 241. Directly after May 11, 2015, the Plaintiffs immediately invested another approximately $255,000 in SFC. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 242. Brian Miloski was appointed interim President of SFC May 11, 2015, and took direct action to notify SGI's partners that SFC had terminated the license agreement. Def. Ex. 18 (Excerpt of Miloski Depo at 220:3-8). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence. Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 243. At his deposition, Brian Miloski testified as to the following: Q But you took direct action and notified third parties that the license agreement had been terminated; is that correct? MR. SOSNOWSKY: Objection. THE WITNESS: At that point in time, that's what I believed. Def. Ex. 18 (Excerpt of Miloski Depo at 220:3-8). | Assignees do not dispute this statement of fact for the purposes of this motion. Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 244. On May 12, 2015, Davis sent Sharma an email that included the text: "Are you also reaching out to the Italians? Does that make sense?" Sharma replied in an email that included the text: "Frankly I was not sure if we could make the trip with the limited time. The other issue was they were only focused on electrons not fuel so to some degree they would be wrapped up in the rescinding of the license to SGI." Def. Ex. 83 (Email Exchange at AD_002725). | Assignees do not dispute this statement of fact for the purposes of this motion. Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 245. On May 12, 2015, Davis wrote an email to Samberg: "Another change in plans . . we are going to Paris so we can meet with the employee and with the guy who supposedly runs SGI for Robert. We want to explain why we dumped Robert and will try to cut a deal to get the electric rights." Def. Ex. 84 (AD_017348). | Assignees do not dispute this statement of fact for the purposes of this motion. Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 246. On May 12, 2015, Davis informed Samberg that "our loan is due in August but we can accelerate any time since [Robert Do] is insolvent and I had an event of default in there for insolvency." Def. Ex. 85 (AD_017351). Samberg responded: "Given ask that makes sense to wait until August. Don't want to provoke him by declaring he is insolvent. The minute he acts up though, we shoot that bullet." *Id.* | Assignees do not dispute this statement of fact for the purposes of this motion. Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 247. On May 14, 2015, Davis and Samberg engaged in the following email exchange: Davis: Met with the lead Solena gasification engineer last night and with the person Robert indicated was heading up Solena Group and who has developed a number of projects in (the arm that has the patent to the electric license). Details to work out for both but they were both positive. I am optimistic but we will see . Samberg "Super. They have real projects or are looking for funding so need the Solena investors? Still no additional word from Robert? Davis: "Nothing from Robert. Yves allegedly has a number of projects ready to go but some of that is posturing. Getting Sylan to work on the gasifer is important. When I thought Robert could go no lower, Yves told us that an employee of Robert who died of cancer at 36 (back in SGI days) was owed $60k. He never paid the guys widow (and two small children) and won't even return her call or emails." Samberg: "Yves must be happy to see him gone." Def. Ex. 86. | Assignees do not dispute this statement of fact for the purposes of this motion. Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 248. On May 27, 2015, Miloski sent an email to Mr. Franco Oliveri and Mr. Enrico Samer that included the text: "SGI, Inc. (formerly Solena Group Inc.) held a license for the use of our intellectual property (excluding know-how) in the biopower sector. We have learned that SGI, Inc. is insolvent. Under the license agreement, insolvency is cause for termination of the license. As such, we sent a notice to SGI, Inc asking them to refute our claim and they failed to do so within the requisite period. Therefore, SGI, Inc. no longer has a license for the use of our intellectual property." Def. Ex. 87 (Email Exchange at ALQ_003281). This same message was also prepared for shareholders and noteholders. Def. Ex. 15. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 249. On May 28, 2015, Brian Miloski had a phone conversation with Yves Bannel in which he informed Mr. Bannel that SFC had terminated SGI's License Agreement. Miloski and asked Mr. Bannel to take SGI's business relationships, opportunities, and goodwill and use them for the benefit of Plaintiffs. Def. Ex. 88 (Email at ALQ_010421). In the text of the email, Miloski wrote: | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

I spoke with Yves (he left me a voicemail as well); much of it is same as Paris. Most interesting bits were the Ty Chan/Robert Do note (see 7th bullet below), the fact that his mother is still alive and the salary ask (last bullet).

• Said Rajeev would call him later today

• Thinks BA is a dead project and we need to work on DGPS with him

• Has very mature DGPS projects for us to work with him on

• Says Robert is busy trying to make agreements with everyone in Europe for Biopower

• Yves has very useful patent

• I Need support Robert has not served me well in the past, I am looking for good partner who can fund the SGPV FEED, from there everything else will be paid for. Getting the gasifier FEED done is hard part1

• Ty Chan (GE) reached out to Yves about a project and specifically asked him NOT to share it with Robert

• I asked him to send us information about what he considers his best project. He said he would get this to us this weekend

• Reconfirmed that loosing Angel was not really a loss, Sylvain and Eddie are keys

• Says he wants to work with whoever has the money, goodwill and vision; would rather it be us than Robert

• Said he (Yves) is NOT looking for any salary

88

*Id.*

| | |
|---|---|
| 250. On May 31, 2015, Yves Bannel emailed Brian Miloski a letter that included the following text: "As agreed during our recent phone conversation, we have several mature DGPS projects in Europe as well as at least 2 bigger projects to convert MSWinto about 50 MW of power in Sosnowiec and Wyzsogröd (both in Poland)." Def. Ex. 89 (Yves Bannel Letter at ALQ_005059). Miloski forwarded the email to Sharma on the same day. *Id.* | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 251. Plaintiffs were able to convince each of SGI's partners that SGI no longer had the rights to market the bio-power products and each refused to return Dr. Do's phone calls and stopped doing business with SGI. Def. Ex. 3 (Rule 30(b)(6) Depo of SGI at 334:16 – 336:16; 371:9 – 375:3). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with admissible evidence, as the document relied upon is hearsay.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 252. Even as Plaintiffs were executing their takeover of SFC, Sharma and his legal counsel Joseph Carlin were thinking ahead to the next step in the conspiracy: putting SFC into Chapter 7 bankruptcy so that the creditors (including ALQIMI) could make a credit bid for SFC assets and patents. Def. Ex. 90 (ALQ_002842) ("Brian please don't forget to ask or run by the issue of a bankruptcy proceeding with British Airways thanks."). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 253. Following the takeover of SFC, Plaintiffs set in motion a plan with the goal of:<br><br>(i) having SFC file Chapter 7 bankruptcy; (ii) having the Shareholder Plaintiffs make a credit bid for SFC assets, including the patents; and (iii) having the Shareholder Plaintiffs and ALQIMI contribute their assets for joint ownership in ALQIMI Energy. Def. Ex. 9. Less than four weeks after the takeover, the new SFC Board of Directors began formally discussing their plan to move SFC into bankruptcy. Def. Ex. 91 (BCM_004202). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 254. On May 28, 2015, Sharma emailed SGI's engineer Eddie Robinson about ALQIMI's plans for the future. Sharma described a plan to use SGI's bio-power products ("small scale power projects") in the areas that SGI had been pursuing through its joint ventures ("Hawaii, India, etc…), and stated that ALQIMI was "interested in confirming Solena gasifier design to support those projects." Def. Ex. 92 (ALQ_010423). In a June 1, 2015 memorandum sent by Sharma to the Board of SFC, Sharma admitted then that he had several conversations with Eddie Robinson (the lead engineer for the SGI Bio-Power Products) and that it looked like Robinson was prepared to stay engaged if he was paid $15,000. Def. Ex. 93 (ALQ_009221). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 255. Sharma's June 1, 2015, Memorandum also stated: "SGI License: The 10-day window for SGI to respond has expired. Joe has been analyzing the pathways and expenses (talking to outside lawyers) involved with furthering this piece. We received a response from Robert on the letter this weekend and are still reviewing it." In discussing SGI's partners in Italy in the June 1 Memorandum, Sharma admits "we made it clear to the Italians that we terminated the license to SGI. Separately SFC, ALQIMI and Samberg have all issued demand notices to Robert's lawyers. Def. Ex. 93 (ALQ_009221). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 256. On June 5, 2015, Miloski wrote an email to Sylvain Motycka (cc to Sharma) with the text: | Assignees do not dispute this statement of fact for the purposes of this motion. |
| I hope all is well and you are getting ready to enjoy the weekend. I trust you saw the payroll direct deposit this morning which is adjusted for your 401K contribution. Let me know if there are any problems. | Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| Can you confirm your availability to meet again in Paris on the 16th or 17th of June? We are meeting with BA on June 15 and will visit you and Yves in Paris on Tuesday or Wednesday. | |
| Also wanted to make sure we are on the same page with regards to current status. As current employees of Salena Fuels Corporation, we are all bound by confidentiality to make sure we treat all Solena information securely, this includes information about plans, funding, etc. We appreciate you continuing to honor this part of your obligations. | |
| Please note our below responses to your previous questions and let me know if anything requires further clarification. | |
| **Which DGPS project has SFC's senior management chosen to start working on?** | |
| We don't think a decision needs to be made regarding "either or" on the DGPS. Reality is that we need a GI FEED to be completed and all the DGPS projects can utilize it. Furthermore, we haven't yet received enough information about Yv es' projects yet. We can start the GI FEED without knowing which project is the front runner. | |
| **Has SFC secured the necessary funds to cover all the GI FEED expenses - as shown in the budget that I provided to you via Yves?** | |
| The current investors have committed ~$1.5MM to the pivot. This includes working capital and salaries so by itself will not cover the GI FEED costs. But we believe current investors will participate more and that new investors can be bought in once we | |

91

| | |
|---|---|
| 257. On June 19, 2015, Davis wrote an email to Samberg with the text: "New team making progress. Also was able to convince Italians to work with us rather than team up with Robert." Def. Ex. 105 (AD_021679). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 258. SGI had partnered with General Electric since 2001 and had invested approximately $5 million in the development of SGI's bio-power products IPGC and IPGCC projects including IndyGreen and Pertamina. Def. Ex. 3 (Rule 30(b)(6) Depo of SGI at 373:14 – 374:3). After Plaintiffs' actions on and after May 11, 2015, General Electric stopped doing any work with SGI, Robert Do's contact at General Electric has stopped returning Robert Do's calls, and GE representative Ty Chan told Yves Bannel that he wanted nothing to do with Robert Do or SGI. *Id.*<br><br>(Rule 30(b)(6) Depo of SGI at 372:3– 374:3). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence or has relied upon inadmissible hearsay.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine |
| 259. Davis started making concrete plans regarding the bankruptcy and the ownership interest of the SFC investors and "ALQIMI Energy" in early July. On July 2, 2015, Davis wrote an email to Samberg with the text: "The real number is going to be in the debt since that will convert into the new preferred equity after the chapter 11 bankruptcy we are planning." Def. Ex. 95. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine |

260. On July 2, 2015, Sharma wrote to Davis, copying Carlin and Miloski, the following:

I hope this email finds you well this holiday weekend. Brian sent an email to the Board yesterday but I wanted to speak to you directly about where I see the state of the business.

As you know, 2 weeks ago Brian and I concluded what we considered a very productive trip with BA, the Italian investors and Sylvan Motycka. I believe we made good progress in our efforts to stabilize SFC and promoted confidence with our investor partners as well as key employees. In addition, last week Joe and I were in Hawaii upon the request of our local partners and we believe we made great strides to move our Hawaii opportunities forward.

So as of the end of last week it has been 6 weeks since we initiated the restructuring of SFC and fired Robert Do. During this time Brian and I have been on the road for about three of those weeks. In the interim we have focused our efforts on internal SFC operations, slashed payroll and halted all unnecessary expenditures of funds. The new SFC management, Brian and our team, have spent a considerable amount of time, more than we anticipated, in dealing with a host of employee retention and termination issues, identified a candidate for CEO, engaged in corporate clean up activities, focused on relationship management and prepared for a third party diligence of our IP. Additionally Joe Carlin and his team have stepped up and provided in-house legal review and support all with a focus to manage SFC's legal costs and minimize the use of outside counsel. Because of their extensive background with Solena, Joe and his team have historical understanding of issues and awareness of specific nuances related to SFC's challenges. This knowledge has allowed the legal team to respond more quickly, efficiently and cost effectively to these issues than would be possible by

Assignees do not dispute this statement of fact for the purposes of this motion.

Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment.

93

| | |
|---|---|
| 261. Davis forwarded Sharma's email to Art Samberg and wrote:<br><br>Further evidence of the frustration with Avi and Dick. They made up $400k of the<br><br>$1.6rnrn runway and just woke up and said we are out.<br><br>Any chance you would be willing to backfill the $400k? Alqimi is busting their ass to straighten the ship and are the best hope we have of succeeding with Solena. They will clearly want equity at the back end or coming out of chapter 1.l bankruptcy {which they deserve) as they are dedicating resources (both time and facilities) without compensation. However, the difference in the runway is November vs. February...a critical 3 months. This is still high risk obviously and we are more likely than not to lose it all but it seems like it we are going for it, we should at least put Alqimi in the original position they thought they would be when we started this.<br><br>If we do this, I will ask Avi and Dick to remove thernselves frorn the board as a condition. This brings the board down to Rajeev, Fred Schmuck and me. I would retain the right to fill those seats.<br><br>Please let me know. We won't need the additional funds until later this year.<br><br>Def. Ex. 96. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 262. On July 12, 2015, Sharma and Miloski explained that their ultimate goal was not to complete the British Airways project, but rather to pursue what had been SGI's bio-power business using SGI's bio-power products. Def. Ex. 97 (BCM_004310) ("Ultimate goal is not to get BA signed. Ultimate goal is to get the overall opportunity – IBGTL, DGPS and PICO – properly capitalized."). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine |

| | |
|---|---|
| 263. On July 27, 2015, Davis sent the following email to Art Samberg and Jeff Samberg:<br><br>Just concluded my meetings with Rajeev, Joe and Brian regarding the future of Solena. It seems clear to the 4 of us that British Air is just stringing us along while looking at alternatives to Solena and while we pay off Barclay's (if we don't, BA is on the hook). Bottom line, if we feel we have to pull the plug on the BA deal - a very painful conclusion but we can't keep throwing money at this project if ultimately we won't get it done. You may have noted in the recent United/Fulcrum jet fuel deal, United agreed to cover the development work, something BA has never offered to us although we asked for it . Seems like we have 3 options - (1) push for a quick answer on (a) giving is an extension to the exclusivity agreement which expired on June 1 and (b) funding development, (2) keep the status quo (play along as if they are interested and we don't know about them speaking to Fulcrum and (3) tell them we are withdrawing subject to agreeing to extend exclusivity and provide development$$ (similar to (1)). We think (3) is the right alternative and, subject to board approval and your ok, we will do that.<br><br>As for next steps and including pursuing the gasifier for electric generation, we spent a lot of timing discussing how we could achieve that and how it would look structurally and economically. My biggest concern is supporting the effort to develop the gasifier for electric only to be cut in for a very small piece of the economics. Doesn't work. Alqimi is putting together a deck with a proposal of how it could work and will get that to me by the end of the week so we can go over it then.<br><br>Def. Ex. 98. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 264. Art Samberg responded: "Only if they pay the price. Insane that they've been screaming "get Robert out" and then renege. They should be crammed. How much do they own?" Def. Ex. 98. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine |
| 265. On August 4, 2015, Sharma sent an email to Davis, copying Carlin and Miloski, stating the following:<br><br>For your review a presentation and a spreadsheet (it is imbedded in the presentation but we sent the spreadsheet as well). The presentation has more detail than you probably need, but we wanted it to be a standalone document that could be understood by people not familiar with Alqimi or our history with Solena.<br><br>Lets plan on speaking at 1pm so we can discuss, if that is still convenient to you.<br><br>Def. Ex. 99. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 266. Davis immediately forwarded the presentation to Art Samberg and wrote:<br><br><br>I am speaking to Alqimi at 3pm about the presentation they sent me earlier today. Bottom line it calls for us to drop the Solena IP (after the secured creditors foreclose on the assets) into a Newco for 10% of the Newco and for us to contribute $2mm at $1Smm pre money. Means we would have around 15-17% of this new company. obviously, the percentages are their first offer and would go higher if pushed but the most important element is their requiring $2mm from us. I have been clear that they should rely on us for more than originally discussed so the $2mm is a new ask.<br><br><br>I want to think about it more and won't commit either way on the call but I am inclined to tell them that we won't stand in their way to foreclose on the IP and drop it into the Newco for some of the equity but we will not participate in new funding. While I think they have a shot of getting it done, it is still high risk and I don't think we have the funds for so risky a venture at this stage. They will still need to raise another $2mm and I am not sure how realistic they are about getting it. I am thinking it is time to walk away and take the write-off.<br><br><br>Def. Ex. 99. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

97

| | |
|---|---|
| 267. Samberg responded: "We had a family foundation meeting where I explained that due to uncertain funding ability we will wind SFF down sooner than expected. We gave Steve Novak another brutal message this morning. I do not have $2mm to put into this. I would walk away." Def. Ex. 99. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 268. Davis responded "Probably makes sense for me to resign from the Board" and Samberg replied "they would know you are serious and not just a deep pocket." Def. Ex. 99. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 269. On August 17, 2015, Davis sent an email to Samberg analyzing the ALQIMI Presentation, discussing the steps he has taken to verify the numbers in the ALQIMI Presentation and sharing his findings with Samberg. Def. Ex. 100 (AD_017596). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 270. On August 19, 2015, Miloski forwarded a Newco Ownership Worksheet and the ALQIMI Energy Forecast dated August 19, 2015 to Davis and wrote: Good afternoon Aryeh. Please note the attached files for this afternoon's call. Talk to you later. Brian. Def. Ex. 101. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| 271. Davis forwarded Miloski's email to Art Samberg and Jeff Samberg and wrote:<br><br>I went through the attached models that Alqimi and Brian put together for the electric power business using Selena technology. Even if you cut their estimates in half, the projected IRR is impressive. The trick, however, is to get the funding to get to a place where they are able to execute on the plan. In order to get to the next milestone, they will need at least $3-4mm and they expect $2mm of that from us. In fact, they anticipate closing on our $2mm first then getting the rest of it later. Apart from our liquidity issues, we have heard this song before in many of our portfolio companies fund us now and we will get the rest later only to find out that no one else is coming in. According to their model, we would have 18.5% of NEWCO after the new investment of $2mm. This assumes Solena IP is 15% of NEWCO (of which we would get around 7%) and the new investment is based on $11mm pre-money.<br><br>I suggest we help them fund the Chapter 7 and anticipate this will require around another $300k -$350k from this point (we still have around $600k left on the cash sheet). Given our liquidity situation, I would suggest we tell them we wll not put<br><br>$2mm into the new venture. I would also suggest that we sell them our equity for $1 so we can take the tax write off but hold on to our secured debt so we get the piece of NEWCO. I also think that I need to resign from the board and give them the rights to be collateral agent. They have asked me to attend a meeting on September 8th with a potential Italian investor so perhaps I will delay resigning until after that time.<br><br>I do not think they are meeting with Luminoso as a favor or inducement to usI think they are meeting with them because they truly think it will help them get government contracts so I do not think our decision here will impact that but I cannot be sure. As a hedge, funding the bankruptcy may be a good way to assuage some of the angst of us pulling out. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| --- | --- |

99

| | |
|---|---|
| 272. In September 2015, Sharma and ALQIMI made a securities offering to Aryeh Davis. In the presentation, Sharma proposed that a new holding company ("NewCo") should be created to pursue what had been SGI's bio-power business using SGI's bio-power products. Def. Ex. 102; Def. Ex. 9. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 273. In the September 2015 securities offering, Sharma represented that ALQIMI had the rights to all of SGI's joint ventures and the Kits. Def. Ex. 9. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 274. In the ALQMI Presentation, Sharma describes a business plan that is identical to SGI's business plan as memorialized in the November 20, 2014, Manufacturing Agreement and describes technology that is identical to SGI's bio-power products: "small scale, pre-fab, modular, bio-power systems to market: First project on Hawaii; then "kit" model in India where market opportunity is overwhelming and ALQIMI has laid considerable foundation." Def. Ex. 9. Sharma stated in his securities offering that the NewCo value was $11 million. *Id.* | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 275. The ALQIMI Presentation then included a business plan, budget and forecasted $580,000,000 of Kit sales in India by "ALQIMI Energy" over an eight-year period. Def. Ex. 9. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 276. ALQIMI identified potential financing sources for working capital and project financing including the Sahara Group, TATA capital, Orynx Investments and the Indian Central Government and other family offices. Def. Ex. 9. | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 277. The forecast for the sale of the Kits in the Indian market was prepared based on Sharma's and ALQIMI's extensive experience with the Indian market. In fact, they make the following representations in the ALQIMI Presentation: • ALQIMI has been operating in India since 2007.<br><br>• Dedicated resources and office in Delhi.<br><br>• Established reputation in the market.<br><br>• Extensive ecosystem of business relationships.<br><br>• Domestic Indian market poised for substantial growth in the Renewable sector.<br><br>• PM announced a $200B initiative for Renewable sector.<br><br>• Indian appetite for energy is substantial and growing.<br><br>• Waste to energy is much needed and underserved.<br><br>• We establish a modest objective of 5 units per State.<br><br>• Because of insufficient fossil fuel supple, India suffers from rolling backouts; hence the Country's focus on renewables.<br><br>• Comprehensive costing conducted for India developed and sourced solution delivery.<br><br>• Use of Indian Resources: TATA Group, TERI, BHEL.<br><br>• Global EPC presence in India is also source of resources: FLOUR, FW, Bechtel.<br><br><br>Def. Ex. 9 (ALQ_015438, ALQ_015458). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 278. The ALQIMI Presentation contained the following text under the heading "Forward Proposal": • SFC to file Chapter 7; SFC Sr. Creditors to make credit bid for SFC assets<br><br>• Establish NewCo<br><br>• SFC Sr. Creditors and Alqimi contribute assets for 15%/85% ownership split<br><br>• Change name to ALQIMI Energy<br><br>• Samberg invests into ALQIMI Energy, $2M @ pre money of $11M<br><br>• Board of Directors<br><br>    o Aryeh Davis<br><br>    o Rajeev Sharma<br><br>    o Fred Schmuck<br><br>Def. Ex. 9 (Presentation at AD_017584). | Assignees do not dispute this statement of fact for the purposes of this motion.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |
| 279. Several months after Miloski boxed SGI's files and sent them to ALQIMI, Sharma appointed Miloski President of ALQIMI Energy, a new company that was using SGI's misappropriated assets to pursue the bio-power business. Def. Ex. 18 (Miloski Depo at 63:6 – 67:14); Def. Ex. 9. | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground that Defendant has not supported his assertion with record evidence.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

| | |
|---|---|
| 280. Robert Do testified in his deposition: "But the cause is clearly the illegal termination of the license, and then, secondly, the action taken by contacting all of my confidential partner, vendors, shareholders, distributors, partners such as GE and the providing them with false information as in the fact that the license was terminated, that SGI has no right to the technology in bio-power irrelevant and falsifying all those false claims to all the people I just mentioned. That's number two. Converting, i.e., taking all of SGI hard documents, the files and server and soft copying all the information, a combination of all those essentially destroyed SGI business." Def. Ex. 3 (Rule 30(b)(6) Depo of SGI at 395:15 – 396:6). | Pursuant to Fed. R. Civ. P. 56(c)(2), Assignees object for the purpose of this motion on the ground the evidence does not support the Defendant's characterizations, which are not factual statements but argument.<br><br>Assignees further state, pursuant to Fed. R. Civ. P. 56(c)(1), that the assertion does not establish a genuine dispute of material fact that would preclude summary judgment. |

DATED:  November 7, 2018

Respectfully submitted,

/s/ Jonathan L. Gold
Jonathan L. Gold
Michael Best & Friedrich LLP
601 Pennsylvania Avenue NW, Suite 700 S.
Washington DC, 20004
202.747.9594
jlgold@michaelbest.com

and

*Mark H.M. Sosnowsky*
Mark H.M. Sosnowsky (admitted PHV)
Drink Biddle & Reath LLP
1500 K Street, N.W.
Washington, DC 20005
202.354.1327
mark.sosnowsky@dbr.com
*Counsel to the Assignees*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 7, 2018, I electronically filed the foregoing Response to Defendant's Statement of Material Facts with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Paul Sweeney
Andrew Gerlowski
Yumkas, Vidmar, Sweeney & Mulrenin, LLC
10211 Wincopin Circle, Suite 500
Columbia, Maryland 21044
Email: psweeney@yvslaw.com
Email: agerlowski@yvslaw.com

William Day
William Day Law Group, LLC
98 Church Street
Rockville, MD 20850
301-605-1722
williamdaylaw.com
Day@williamdaylaw.com

*/s/ Jonathan L. Gold*
Jonathan L. Gold,
Counsel to the Assignees