

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)**

| | |
|---|---|
| In re:<br>SOLENA FUELS CORPORATION<br>　　　　Debtor | Case No: 15-24430-WIL |
| RAJEEV SHARMA, et al.,<br>　　　　Plaintiff,<br>v.<br>ROBERT DO<br>　　　　Defendant. | Adv. Proc. No.: 17-00471 |

**ORDER GRANTING PARTIAL SUMMARY JUDGMENT**

Before the Court is Assignees' Motion for Partial Summary Judgment [26], filed on October 10, 2018, Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment [38], filed on October 23, 2018, and Assignees' Reply in Support of Motion for Summary Judgment [41-42], filed on November 7, 2018. Counsel for Assignees and for

Defendant appeared at a hearing on December 12, 2018, at which time the Court granted partial summary judgment in favor of Assignees on Counts I and V and denied summary judgment on Counts II-IV and VI.  As set forth herein, the Court concludes with respect to Count I and V that there is no genuine dispute as to any material fact and the movants are entitled to judgment as a matter of law on those claims.  The Court denies summary judgment as to the remaining counts.

**I.     Statement of Undisputed Facts.**

The following undisputed facts are material to the Court's analysis.[1]

1.     The debtor entity, Solena Fuels Corporation ("Debtor" or "SFC"), was a Delaware corporation, which filed for bankruptcy on October 16, 2015.  Case No. 15-24430 at Dkt. No. 1.

2.     On October 17, 2015, Gary A. Rosen was appointed Interim Trustee.  Case No. 15-24430 at Dkt. No. 4.

3.     On November 30, 2017, the Trustee filed this Adversary Proceeding against Defendant Robert Do.  Dkt. No. 1.

4.     On March 5, 2018, the Court granted the Trustee's motion to assign the estate's claims against Do to Rajeev Sharma, Aryeh Davis, Avi Hoffer, Richard Wenzel, Brian Miloski, Joseph Carlin, Richard Cohen, Arthur Samberg, GreenFuel Technology LLC, Acadia Woods Partners, LLC, Samberg Family Foundation, Inc., SGNA LLC, GA Development, LLC, SAN

---

[1] On October 10, 2018, Assignees filed a Statement of Material Facts in Support of Motion for Summary Judgment ("Assignees SMF") containing 99 material facts.  Defendant did not contest any of Assignees' statements of material fact, and the Court may consider these facts undisputed for the purposes of this motion. Fed. R. Civ. P. 56(e). Defendant submitted his own 74-page Statement of Material Facts identifying 280 facts that he claims create a genuine dispute of material fact.  Assignees objected to all 280 facts on various grounds, including that the stated facts did not establish a genuine dispute of material fact that would preclude summary judgment. *See* Dkt. No. 42. The Court has reviewed Defendant's Statement of Material Facts and Assignees' objections and concludes that the statements cited by Defendant do not create a genuine issue of material fact precluding summary judgment on Counts I and V.

Development Company, LLC, ZLC Investments, LLC, ALQIMI GE&F Holdings, LLC, and ALQIMI Technology Solutions, Inc. (collectively, the "Assignees"). Case No. 15-24430 at Dkt. No. 44.

5. On January 28, 2018, Do moved to dismiss the adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7012 and Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and (12)(b)(6). Dkt. No. 8. The Court denied the motion on June 11, 2018. Dkt. No. 20.

6. Defendant Robert Do was the President and Chief Executive Officer of Solena Group, Inc. ("SGI"). Assignees' SMF ¶ 2.

7. SGI owned three domestic patents and certain counterpart foreign country patents for the Solena Technology (the "Solena Patents"). *Id*. at ¶ 3.

8. In 2012, SGI underwent a restructuring that resulted in the formation of a new company, Solena Fuels Corporation (hereinafter "SFC"). *Id*. at ¶ 22.

9. Following the restructuring, SFC owned all of the Solena Patents, free and clear of any previous liabilities of SGI. *Id*.

10. On April 11, 2012, Defendant became the President and Chief Executive Officer of SFC. *See Id*. at ¶¶ 30.

11. On April 11, 2012, SGI and SFC entered into an Amended and Restated Exclusive Patent License Agreement ("License Agreement"). *Id*. at ¶ 23. Under the License Agreement, SFC granted to SGI "an exclusive license, under the Licensed Patents, to make, have made, use, service, offer for sale and sell, have sold, import and export, have imported and exported, Licensed Products solely within the Field of Use and solely in the Licensed Territory." *Id*. at ¶ 24.

12. The License Agreement defined "Licensed Territory" to mean "all countries of the world in which Licensor holds the Licensed Patents." *Id*. at ¶ 25. Those countries were listed in Exhibit A of the License Agreement and included the following countries only: "Belgium, Czech Republic, Denmark, France, Germany, Ireland, Italy, Malaysia, Netherlands, Poland, Portugal, Spain, Sweden, United Kington, Canada, and Thailand." *Id*. at ¶ 26.

13. On April 11, 2012, Defendant Robert Do entered into an employment agreement with SFC ("Employment Agreement"). *Id*. at ¶ 30. Under the terms of the Employment Agreement, Do was required to "devote substantially all of his business time and efforts to the business and affairs of the Company [SFC] and its subsidiaries and to the diligent and faithful performance of the duties and responsibilities duly assigned to him pursuant to this Agreement." *Id*. at ¶ 32. During his employment with SFC, Do was not permitted to "directly or indirectly, render any services of a commercial or professional nature to any other person or organization, whether for compensation or otherwise, except for a de minimis amount of business time to SGI." *Id*. at ¶ 33.

14. Do agreed that any time devoted to SGI "shall not have an adverse effect on his obligations to the Company." *Id*. at ¶ 34.

15. In connection with the Employment Agreement, Do also signed an Employee Proprietary Information and Invention Assignment Agreement ("EPIIAA"). *Id*. at ¶ 35. Under the EPIIAA, Intellectual Property Rights include, among other things, "rights in trade secrets and other confidential information and know-how in the United States and all other countries throughout the world." *Id*. at ¶ 36.

4

16. By an agreement dated January 15, 2013, SFC and General Electric ("GE") entered into a Master Development and Success Fee Agreement, whereby GE agreed to introduce SFC to certain potential waste-to-energy opportunities. *Id.* at ¶ 42. Among the projects contemplated was a potential project with Pertamina Persero in Indonesia. *Id.* at ¶ 43.

17. In an effort to secure the Pertamina Project, Do, on behalf of SFC, volunteered to "contribute its in house engineering costs" which he valued up to $500,000. *Id.* at ¶ 44.

18. On or about February 25, 2013, Pertamina agreed to the terms of a Joint Development Agreement and scheduled a formal signing for the afternoon of March 1, 2013 in Jakarta, Indonesia. *Id.* at ¶ 45.

19. Pertamina insisted that the Joint Development Agreement be executed only with SFC. *Id.* at ¶ 46.

20. On February 26, 2013, Do, as President and CEO of Solena Fuels Corporation executed a Limited Power of Attorney appointing Yves Bannel to execute the Joint Development Agreement between SFC, PT Pertamina Persero and PT Godang Tua Jaya (the JDA"). *Id.* at ¶ 47.

21. On March 1, 2013, Bannel signed the JDA on behalf of SFC. *Id.* at ¶ 48.

22. On March 5, 2013, Do, on behalf of SFC, and Bannel, on behalf of SGI, executed an agreement assigning the Pertamina JDA to SGI ("Pertamina Assignment"). *Id.* at ¶ 49.

23. The Pertamina Assignment purported to assign all of SFC's rights, obligations, and liability under the JDA to SGI, but obligated SFC to commit technical, engineering, and any

other material resources to SGI for the development of the project at no cost to SGI. *Id.* at ¶¶ 51-52. SFC did not receive any evident value for the transaction. *Id.*

24. Do did not provide notice of the assignment or its details to SFC's board of directors prior to executing the Assignment Agreement. *Id.* at ¶ 54.

25. On March 10, 2013, five days after Do assigned the Pertamina JDA to SGI, Do wrote to members of the SFC board alerting them to the JDA, but did not disclose that he had unilaterally assigned the JDA to SGI. *Id.* at 55.

26. Subsequently, Do directed SFC employees to undertake work in connection with the Pertamina JDA, which had been assigned to SGI, but SGI did not compensate SFC for the use of its resources. *Id.* at ¶¶ 58, 61.

### SGC ENERGIA

27. Sometime prior to May 11, 2015, SGC Energia ("SGCE") approached SFC regarding its gas-to-liquid business, and proposed using SFC's Solena Technology to make a wax product, which was a new application for the Solena Technology. *Id.* at ¶¶ 65-66.

28. Do started his discussions with SGCE before SFC terminated his employment, but appropriated the opportunity and continued to pursue it through a new entity that he created. *Id.* at ¶ 64.

### THE PROMISSORY NOTE

29. On June 12, 2012, Do as borrower, and SFC as holder, executed a promissory note evidencing an indebtedness to SFC in the principal sum of twenty thousand dollars ($20,000) (the "Note"). *Id.* at ¶ 92.

30.     According to the terms of the Note, interest accrued on any unpaid balance at a simple interest rate of 5.00% per annum for the first 3 months of the term, thereafter increasing to 8.00% per annum. *Id*. at ¶ 93.

31.     Do agreed to pay all expenses, including reasonable attorneys' fees and legal costs, incurred by SFC in collecting any amounts payable under the Note not paid when due. Pl. Ex. RR at ¶ 9.

32.     Do and SFC executed an allonge to the Note, amending and restating the maturity date to June 19, 2013. Assignees' SMF ¶ 95.

33.     Do and SFC executed a second allonge to the Note, amending and restating the maturity date to December 19, 2013. *Id*. at ¶ 96.

34.     On May 27, 2015, SFC sent a demand notice to Do in connection with the Note dated June 19, 2012 demanding payment and specifying each default. *Id*. at ¶ 97.

35.     The outstanding principal is $20,000 and the outstanding interest as of December 12, 2018 is $10,219.34. Interest continues to accrue on the principal amount of $20,000 at a rate of 8% per annum or $4.38 per day.[2]

**II.     Conclusions of Law**

1.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. §§ 105, 502, 548, and 550. This matter is a core proceeding

---

[2] As instructed by the Court, on December 19, 2018, Counsel for Assignees sought consent of Counsel for Defendant as to the calculation of interest, but received no response.

within the meaning of 28 U.S.C. § 157(b)(2)(B), (E), and (F).  Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

2. Summary judgment is governed by Federal Rule of Bankruptcy Procedure 7056, which expressly incorporates the standards of Federal Rule of Civil Procedure 56.

3. Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

4. When considering a motion for summary judgment, the court "must consider whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant."  *Humboldt Express, Inc. v. The Wise Co. (In re Apex Express Corp.)*, 190 F.3d 624, 633 (4th Cir. 1999).

5. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 322-23.  The non-moving party must then "set out specific facts showing a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

6. "A 'material fact' is a fact that might affect the outcome of a party's case. Whether a fact is considered to be 'material' is determined by the substantive law, and [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Sher v. RBC Capital Mkts., LLC*, 539 B.R. 260, 267 (D. Md. 2015) (internal quotations and citations omitted).

*Count I: Breach of Fiduciary Duty*

7. In claims grounded in state law, this Court must apply the conflict of law rules of Maryland. *In re Baltimore Emergency Servs. II*, 401 B.R. 209, 216 (Bankr. D. Md. 2008) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).

8. In Maryland, the courts generally look to the state of incorporation to resolve issues and claims involving the internal workings of a corporation. *Storetrax.com, Inc. v. Gurland*, 397 Md. 27, 52, 915 A.2d 991, 1000 (2007).

9. SFC was incorporated in the State of Delaware, and the Court will apply Delaware law in evaluating Assignees' breach of fiduciary duty claim.

10. In Delaware, a claim for breach of fiduciary duty requires proof of two elements: "(1) that a fiduciary duty existed and (2) that the defendant breached that duty." *Beard Research, Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch.), aff'd sub nom. *ASDI, Inc. v. Beard Research, Inc.*, 11 A.3d 749 (Del. 2010).

11. Officers of a corporation owe fiduciary duties to the corporation, its board, and its shareholders. *Gantler v. Stephens*, 965 A.2d 695, 709 (Del. 2009). As President and CEO of SFC, Defendant Robert Do owed fiduciary duties to SFC, its board, and its shareholders. Assignees' SMF ¶ 38; *Gantler*, 965 A.2d at 709.

12. An officer breaches his fiduciary duty when he "commits an unfair, fraudulent, or wrongful act, including misappropriation of trade secrets, misuse of confidential information, solicitation of employer's customers before cessation of employment, conspiracy to bring about

9

mass resignation of an employer's key employees, or usurpation of the employer's business opportunity." *Beard Research*, 8 A.3d at 602.

13. Defendant Robert Do usurped the business opportunity of SFC when he assigned the Pertamina JDA to SGI for no evident value, without first providing notice to the board and without securing board approval.

14. Defendant Robert Do likewise breached his fiduciary duty when he directed SFC's employees to devote time and resources to the Pertamina project, for the benefit of SGI, without any benefit to SFC.

15. Separate and apart from the breach of fiduciary duty in connection with the Pertamina Project, Do breached his fiduciary duty when he usurped the opportunity presented by the SGC Energia project.

16. Do advances several reasons why the Pertamina Assignment was not a breach of fiduciary duty. The Court has considered these arguments, viewing the facts in the light most favorable to Defendant, and finds that Defendant has not established a genuine issue of material fact that would preclude summary judgment on Assignees' breach of fiduciary duty claim.

17. First, Do argues that the Employment Agreement permitted Do to assign the Pertamina JDA to SGI because the Employment Agreement "acknowledged and endorsed" Do's simultaneous employment with SGI. Def.'s Mem. in Opp'n to Pl.'s Mot. for Summ. Judgment ("Def.'s Opp'n") at 10; Tr. at 32:24-33:11. The issue here, however, is not that Do continued to work for SGI, but that he diverted corporate opportunities belonging to SFC to SGI, without providing value to SFC and without securing board approval. In fact, the board could not have

objected to the assignment because Do secretly assigned the Pertamina JDA without notifying the board. Accordingly, viewing all facts in the light most favorable to Defendant, I find that no reasonable jury could conclude that the Employment Agreement authorized Do to assign the Pertamina JDA to SGI for no evident value and without informing the board of the assignment.

18. Do next argues that he did not breach his fiduciary duties because the Pertamina project was the kind of project that the License Agreement allowed SGI to pursue. Def.'s Opp'n. at 10. There are two flaws in this argument. First, the License Agreement is unambiguous and according to its plain terms, only grants SGI a license in the United States and those countries listed in Exhibit A; Indonesia is not included among these countries and therefore SGI has no license to use the Solena Technology in those countries. Second, even if SGI was permitted under the License Agreement to utilize the Solena Technology in Indonesia, such would not excuse Defendant from assigning the opportunity to SGI or obligating SFC to provide resources, where no apparent value is provided to SFC. Do was not excused from his fiduciary obligations to SFC and those obligations required him, at a minimum, to refrain from transferring opportunities and resources from SFC without any return.

19. Finally, Do argues that he did not breach his fiduciary duties because he reasonably believed the assignment of the Pertamina JDA was authorized by the Employment Agreement and/or the License Agreement. Intent is not an element of a breach of fiduciary duty claim. *See Beard Research*, 8 A.3d at 601. Even if it was, Do has not introduced any admissible evidence supporting this assertion. Accordingly, Defendant's argument does not create a genuine issue of material fact.

20.     Independent of the Pertamina transaction, Do usurped SFC's corporate opportunity presented by SGC Energia. This provides an independent basis for judgment on Count I.

21.     For these reasons, I find that Do breached his fiduciary duties to SFC and enter judgment on liability for Count I against Defendant and in favor of Assignees. The Court will reserve the question of damages on Count I for trial.

*Count V: Breach of Promissory Note*

22.     There is no genuine dispute that Do executed the promissory note in the principal amount of $20,000, and pursuant to the unambiguous terms of that note, interest accrued at a rate of 5% per annum for the first three months (until September 19, 2012), and after that date interest accrued on the principal amount at a rate of 8% per annum. The Court concludes the Debtor is entitled to recover the principal amount of the Note, plus interest, and all fees, expenses and costs including, but not limited to, reasonable attorneys' fees in collection of the Note.

23.     Defendant argues that statute of limitations on the Note is three years and expired on December 19, 2016. Assignees argue that the applicable statute of limitations is six years and has yet to expire. I conclude that the six year statute of limitations applies to Assignees' claim, but in any event the claim would not have expired under a three year statute of limitations.

24.     The promissory note is governed by D.C. law.

25.     Pursuant to D.C. Code § 28-3-118(a), the statute of limitations governing negotiable instruments is six years.

26. D.C. law defines a negotiable instrument as "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it: (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) is payable on demand or at a definite time; and (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money. . . ." D.C. Code § 28-3-104(a); *see also Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 364 (4th Cir. 2010).

27. The Note satisfies each of these three requirements, and is thus governed by the six year statute of limitations provided in D.C. Code § 28-3-104(a).

28. However, even if Do were correct that a three year statute of limitations applied to the promissory note, the statute of limitations did not expire prior to the commencement of this Adversary Proceeding. Section 108 of the Bankruptcy Code provides:

> "**(a)** If applicable nonbankruptcy law… fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, *the trustee may commence such action only before the later of –*
>
> **(1)** the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> **(2)** *two years after the order for relief.*"

29. The Petition was filed on October 16, 2015, and even if a three-year statute of limitations applied, the statutory period would not have expired as of the Petition Date. Accordingly, the time by which the Chapter 7 Trustee was required to file a claim for collection

on the Note was extended to October 16, 2017. By October 16, 2017, Defendant had entered into a Tolling Agreement, tolling the statute of limitations for all claims until and including November 1, 2017. The adversary proceeding had commenced within that period of time and therefore, even under a three year statute of limitations, the claim is timely.

30. To date, Do has made no payments on the Note. Viewing the facts in the light most favorable to Do, I find that there is no genuine issue of material fact precluding summary judgment on Count V. I enter judgment in favor of Assignees as to Count V and further hold that Assignees are entitled to judgement of $30,219.34 in principal and interest through and including December 12, 2018 and that interest will continue to accrue at a rate of $4.38 per day until the judgment is satisfied. Assignees are also entitled to their reasonable costs and attorneys' fees at an amount to be determined following a submission by Assignees.[3]

**WHEREFORE,** for the reasons set forth herein, it is hereby:

**ORDERED** that Assignees' motion for partial summary judgment is granted, in part, and judgment is entered in favor of Assignees and against Defendant on liability for breach of fiduciary duty on Count I; and it is further,

**ORDERED** that Assignees' motion for partial summary judgment is granted and judgment is entered in favor of Assignees and against Defendant on Count V in the amount of $30,241.34 as of December 12, 2018, plus Assignees' attorneys' fees and costs. Partial payment pursuant to this judgment shall first be applied to interest, which shall continue to accrue at a rate of 8 percent per annum (or $4.38 per day) from December 12, 2018 until the judgment is paid in

---

[3] The parties are encouraged to attempt to seek agreement on the reasonable costs and fees prior to submission to the Court.

full.  Assignees shall submit a request for attorneys' fees by January 11, 2019 and Defendant will submit any response by January 25, 2019; and it is further,

**ORDERED** that summary judgment in favor of Assignees is denied with respect to the remaining counts, and the parties shall proceed to trial on Count II, III, IV and VI, and the issue of damages for Count I, consistent with the scheduling order previously entered by this Court.

CC:  All

**END OF ORDER**